(No. 12340.—Decree affirmed.)

MARY ELIZABETH HUDSON *et al.* Appellees, *vs.* JOHN M. HUDSON *et al.* Appellants.

*Opinion filed February 20, 1919—Rehearing denied April 3, 1919.*

1. DEEDS—*what is evidence of delivery of lost deed.* Where a grantor executes deeds to each of his seven children, puts all the deeds in one sealed envelope and delivers them to a third person to hold until the grantor's death but with the intention of parting with all control thereover, all the deeds are delivered, including one which the grantor subsequently, without the knowledge of the custodian, took from the envelope and destroyed.

2. SAME—*delivery of deeds depends upon intention of grantor.* Where deeds are delivered to a depositary to be kept until the grantor's death, the effect of their delivery depends upon the intention of the grantor, when they were delivered to the custodian, to part with the custody and control of the deeds and to have them take effect as conveyances.

3. SAME—*subsequent change of grantor's intention cannot affect delivery when once completed.* Where deeds are delivered in escrow, to be kept until the grantor's death but with the intention of the grantor to part with all control over them, a subsequent change of the grantor's intention cannot affect the delivery thus completed.

4. SAME—*the holder of deeds in escrow cannot part with them, even to grantor, if contrary to instruction upon delivery.* Where a grantor delivers deeds to a depositary with an expressed intention to have them take effect as conveyances and with instructions to deliver them to the grantees at his death, the custodian holds the deeds for the benefit of the grantees, and he has no right to surrender them to the grantor and the grantor has no right to receive them.

5. SAME—*statement in grantor's will that deeds were delivered does not constitute a delivery.* A will speaks from the testator's death, and hence a statement in the will declaring certain deeds previously executed by the testator to be legally delivered does not constitute a delivery if the deeds were actually undelivered before the testator's death.

6. SAME—*when rule in Shelley's case applies.* A recital in an ordinary statutory form of warranty deed that only a life estate in the grantee is intended, and that at the death of the grantee, either

before or after the death of the grantor, the title shall vest in the grantee's legal heirs, does not limit the estate granted to less than a fee simple, as under the rule in *Shelley's case* the language used creates an estate in fee simple in the first grantee.

7. SAME—*what condition cannot be attached to conveyance in fee.* A limitation in a deed which conveys a fee, that the grantee in his lifetime shall not make any disposal of the fee and that his interest shall not become liable for his debts is of no effect.

8. SAME—*everything will be presumed against the despoiler of evidence.* Where a party to a suit has intentionally destroyed material evidence every presumption will be indulged against him, and although this does not relieve the opposite party from the burden of proving his case, it has the effect, where the evidence is vague and uncertain, of raising a presumption against the party who has destroyed the evidence which would make the facts clear.

9. SAME—*what presumptions are against grantor who has destroyed deed.* Where a grantor unlawfully regains control of a deed which has been executed and delivered and destroys it he must suffer the inconvenience from the loss of the evidence and not the grantee, and when the grantee has proved that the deed was executed the presumption is that it was absolute and conveyed a fee simple title.

10. SAME—*presumptions against despoiler of evidence prevail against his devisees.* Where a grantor has unlawfully regained control of a valid deed and has destroyed it and has subsequently devised the same property to others, the presumptions against the grantor as to the contents of the deed prevail against his devisees or his voluntary grantees, although they are not shown to have been parties to the destruction of the deed.

11. SAME—*presumptions against a despoiler of evidence affect rule as to certainty required in proof of a lost instrument.* The rule as to the certainty required in the proof, by parol, of lost or destroyed documents must be considered in connection with the maxim that everything will be presumed against a despoiler of evidence, otherwise the rule would often be the means of denying any relief to a complainant where the opposite party has destroyed evidence against himself.

12. SAME—*grantor may convey fee to begin at future time.* A grantor may convey the fee in his land beginning at a future time, and the time of the commencement of the estate may be fixed by his death or may be at any arbitrary date before or after his death, according to such circumstances as the grantor may choose, and, subject to the fee thus granted, the grantor will retain for himself and his heirs and grantees the ownership of the land and the right to possess and use it.

13. SAME—*delivered deed not to take effect until the grantor's death is not a testamentary disposition.* A deed which states upon its face that it is not to take effect until the grantor's death will be sustained as a present grant of a future estate if it has actually been delivered, and it is not subject to the objection that it is a testamentary disposition of property.

14. SAME—*death of grantor or grantee will not defeat deed delivered in escrow.* Where a deed has been delivered as an escrow, to be delivered by the depositary to the grantee upon the happening of a future event, it is not operative to convey the title until the happening of the event and until the grantee becomes absolutely entitled to the second delivery, but when that event occurs the deed is good, and even the death of the grantor or of the grantee will not defeat the delivery.

15. EQUITY—*court of equity may require new conveyance where unrecorded deed has been destroyed.* A court of equity has jurisdiction to entertain a bill to require the heirs of a grantor whose unrecorded deed has been destroyed to execute a new conveyance.

16. SAME—*when equity will aid the donee.* Though a court of equity will not aid a volunteer to carry into effect an imperfect gift, yet where a gift of real estate has been perfected by a legal conveyance, the property rights thus acquired will be protected and enforced by compelling restoration of the deed if destroyed by the grantor after its delivery.

APPEAL from the Circuit Court of Champaign county; the Hon. FRANKLIN H. BOGGS, Judge, presiding.

GREEN & PALMER, (HENRY I. GREEN, and ORIS BARTH, of counsel,) for appellants.

T. E. LYONS, FRANK T. CARSON, and DOBBINS & DOBBINS, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Upon a bill filed in the circuit court of Champaign county by Clifton A. and Mary Elizabeth Hudson against John M. Hudson and others, the court entered a decree directing the master in chancery to convey to the complainants 80 acres of land in Champaign county and two lots of a subdivision in the city of Urbana, and some of the defendants have appealed from the decree.

John H. Hudson was the owner of the land in his lifetime, and the question in the case is whether he conveyed it, after the death of himself and his wife, to Clifton A. Hudson. Prior to and on July 27, 1912, John H. Hudson was the owner of about 665 acres of land in Champaign county and some lots in the city of Urbana, and his wife, Eliza E. Hudson, was the owner of 80 acres of land. It is the contention of the appellees that Hudson and his wife on July 27, 1912, decided to partition their estate among their children, retaining the use of it during their respective lives, and executed deeds for that purpose. Clifton A. Hudson was their son, and they had seven other children, one of whom (Oscar) lived in Minnesota upon a farm for which his father had helped him to pay and expected to make further payments. For this reason, in the partition made on the 27th of July, 1912, nothing was given to him, but it is claimed that a deed was made to each of the other seven children, by which all the real estate of John H. and Eliza E. Hudson was conveyed to them; that the deeds were delivered to G. W. Webber, cashier of the First National Bank of Urbana, to be kept until after the death of both the grantors and then delivered to the respective grantees, but that subsequently John H. Hudson obtained the deed made to Clifton and destroyed it. John H. Hudson died March 7, 1916, leaving a will, by which he purported to devise to Clifton a life estate in 60 acres of the land alleged to have been conveyed to Clifton and the lots in Urbana, with remainder to Frederick M. Hudson, and a life estate in the remaining 20 acres to John M. Hudson, with remainder to John Howard Hudson. The deeds of the other real estate of John H. and Eliza E. Hudson were found in the custody of the bank, but there was no deed to Clifton. Clifton made a conveyance to his daughter of the real estate claimed to have been conveyed to him by his father, retaining a life estate in himself, and thereupon they filed the bill in this case.

287 – 19

Each of the six deeds contained a clause in substantially the following language: "This deed, with six others of the same date, made by the grantors herein, all to their children, is made as anticipating a partition of their estate among their children as they wish it to be done and will only take effect after their decease. Should the grantee die before that event, or at his death, the title to the tracts of land above named shall vest in his legal heirs. A life estate in the grantee named is hereby only intended. The grantee may not in his lifetime make any disposal of the fee interest in said tract of land, nor shall the same, nor any interest therein, become liable for his debts."

It appears from the testimony that in the summer of 1912 John H. Hudson called upon Judge Cunningham, a lawyer living in the city of Urbana, of many years' practice though not then keeping an office, and consulted him about making some disposition of his real estate in view of his death, which he anticipated was near. He said he wanted to make some deeds to his children and lay them aside, not to be delivered until after his death. Cunningham told him that they must be delivered during his lifetime, otherwise they might be set aside, and Hudson was about to give up the plan and make a will, but, after some conversation about what could be done, Cunningham told him that he could make the deeds, place them in the hands of someone to be delivered after his death, but not to be interfered with by him and entirely beyond his control, and that would be a legal delivery. Hudson finally assented to this and the deeds were prepared. Hudson gave Cunningham the names of his children and the pieces of property he wanted them to have. He named the property that he wished to have conveyed to the different members of his family. He told Cunningham how many children he had and spoke of one or more of them being absent. Cunningham's recollection was that he intended to convey his entire property. The deeds were all made upon the same

form, and while Cunningham did not remember the particular language of the deeds to the different grantees, his recollection was that the general provisions of the deeds, outside of the description of the property, were the same. He remembered one of the names in particular was Clifton or Clifford, but did not remember exactly which. No different direction was given as to the deed to Clifton or Clifford from the direction as to the other deeds. Cunningham did not know whether the property was approximately evenly divided or was unevenly divided and did not know how much property or what property was described in the deed to Clifton. He did not remember whether Hudson was reserving any part of his property from the deeds. Cunningham went to Hudson's house with the deeds ready for execution and then came down to the bank with Mr. and Mrs. Hudson, where the deeds were acknowledged by them before Roger F. Little, a lawyer and notary public, who testified to the circumstances of the acknowledgment of the deeds but was not able to state the number of them. The deeds were then placed in an envelope, on which was the following typewritten indorsement: "Deeds of John H. Hudson and his wife, Eliza E. Hudson, now sealed and to be kept sealed until after the decease of both, then by the custodian to be opened and delivered to each grantee, the delivery in this form to the custodian to be considered as a delivery of the deed in legal form." The envelope was sealed and the package was then delivered to G. W. Webber, the cashier of the bank, who indorsed in writing below the typewritten indorsement these words: "Received July 30th, 1912.—G. W. Webber, Cashier." The package was put by the cashier in a safety deposit box, where it remained until some time later, when Hudson came to the bank and asked for the package. He told Fay, the president of the bank, that he wanted the package to make some change and would bring it back, and Fay gave it to him. It was still sealed but when it was

returned it was torn open. After its return the package remained in the bank in the same box in which it had been previously kept until after Hudson's death, when it was found to contain the six deeds to the other children, not including Oscar or Clifton.

On April 5, 1915, John H. Hudson executed his will, in which, after giving to his wife all of his personal estate and the use of his real estate during her life, and reciting that in deeds dated July 27, 1912, he and his wife had partitioned among their children all of his real estate, together with certain real estate belonging to her in her own right, to take effect after the death of both of them, such partition and division being, as they believed, right and fair, having in mind the situation of each of their children and the advancements made theretofore to some of them, but in which partition their son Oscar received no part of their real estate for the reason that he established himself upon a farm purchased by him in the State of Minnesota, in the payment for which testator had made some advancements and expected to make advancements from his personal estate before the farm was paid for, he directed that if the farm in Minnesota should remain unpaid for at his death his wife should further contribute from the estate in her hands to such payment, such sums as she or the testator should so pay to be considered as advancements to their son Oscar or his family in the final settlement of the estate. The fifth and sixth clauses of the will then, after reciting that their son Clifton had received no part of the testator's real estate by the deeds mentioned, made the devises which have been already mentioned of the 60 acres of land and the lots in Urbana to Clifton for life with remainder to Frederick M. Hudson, and of the 20 acres to John M. Hudson with remainder to John Howard Hudson. The eighth clause was as follows:

"*Eighth*—After the death of my wife and myself, with full knowledge of the circumstances and needs of all our

children, have made and executed the aforesaid deeds of partition of our estate among our children and have surrendered possession of the same and each of said deeds of conveyance to the custodian, to be delivered to each of them after our decease, having been actuated in so doing by like affection of all, in the belief that our real estate so distributed would do no injustice to any but would best subserve the interests of all. Therefore we urge upon them, and each of them, acquiescence therein without words of complaint or thought of injustice. Said deeds are hereby declared delivered and titles conveyed."

The lawyer who wrote this will testified that when John H. Hudson came to see him about writing this will he had a will with him, which was destroyed after the new one was executed. The older will was in all respects identical with the new will, except that the former will devised 80 acres to Clifton, together with some town property, for his life and with remainder to Clifton's heirs, while the new will gave only 60 acres of the 80 to Clifton with remainder to Frederick, and gave 20 acres to John M. Hudson. The new will is a copy of the old will, except the two clauses which devised the 60 acres to Clifton and the 20 acres to John. The date of the first will does not appear.

Three questions are necessary to be determined: First, was any deed to Clifton A. Hudson executed on July 27, 1912; second, if so, was that deed delivered; and third, if such a deed was made and delivered, what property was included in it and what were its terms.

It satisfactorily appears from the evidence that John H. Hudson and his wife intended to execute deeds on July 27, 1912, to all of their children but Oscar. Hudson consulted Judge Cunningham about the disposition of his real estate by making deeds to his children, and after Cunningham informed him of the necessity of an actual delivery of the deeds and they had discussed the question of making a will it was decided that the deeds should be executed, and

this was done. Each of the seven deeds recites that it, with six others of the same date, all made by the grantors to their children, is made as anticipating a partition of their estate among their children. The recital in the will refers to these same deeds, stating that by them the testator and his wife have partitioned among their children all of their real estate, but that their son Oscar received no part of such real estate for the reason which was stated. It is true that in the new will which was written it is also recited that Clifton received no part of the real estate by the deeds mentioned, but this recital is inconsistent with the previous recital that the testator and his wife had partitioned among their children all of their real estate and with the devise of certain real estate to Clifton and John, which, if the previous recitals are true, was included in the partition of July 27, 1912. There was no other devise of real estate after the death of the wife except these two, but the will refers to the partition of the estate as an accomplished fact, and urges upon the children of the testator acquiescence therein without words of complaint or thought of injustice, declaring the deeds to be delivered and the titles conveyed. The deeds which were executed on July 27, 1912, were all placed in one envelope and delivered to the custodian to be held for the grantees. So far as the six deeds which were produced on the hearing are concerned, they were never changed. Hudson obtained the package, saying he wanted to make some change and would bring it back. He returned it broken open, and it then contained the six deeds unchanged. Why did he break open the package? The change which he wished to make was not made in any of the six deeds. It must have referred to something else. If he did make any change it must have been with reference to the seventh deed. On the cross-examination of the witness who drew the will it appeared that the testator told him that he had become angry with Clifton's wife and daughter and had determined that they should not take the

property given them in the will, and this may have been the motive upon which he acted when he went to the bank and got the package containing the deeds.   Mrs. Hudson testified she did not sign any deed to Clifton and no deed was made to him.   She said she did not read the deeds she signed; that she did not count the deeds, did not know that the deeds signed stated that there were seven of them, and did not know how many were sealed up and left at the bank.   She was seventy-three years old at the time she testified, had been sick and under the constant care of a nurse for more than a year, and her testimony was about a transaction which occurred four or five years before she testified, in which her part was apparently passive, Judge Cunningham's conferences and discussions having been with her husband, only.   She gave no reason why no deed was made to Clifton in the partition of the property, and her denial of the execution of such a deed is so inconsistent with the purpose which she and her husband had in view in making the deeds that her denial is not entitled to any considerable weight.

It appears from a preponderance of the evidence that seven deeds were executed on July 27, 1912, and that Clifton A. Hudson was the grantee in the missing deed.   All the deeds that were executed were delivered or none of them were delivered.   They were placed together in a sealed package and delivered to a custodian.   The instructions given to the custodian applied to all the deeds alike. The typewritten indorsement on the envelope expressly declared that the delivery to the custodian was to be considered as a legal delivery of the deeds and that they were to be kept sealed until after the decease of John H. Hudson and his wife and then to be opened by the custodian and delivered to the grantees.   Webber, to whom the package was delivered, stated that Judge Cunningham said they would like to have the papers put away, and referred to the typewritten indorsement on the envelope and said they

would like to have the papers kept by the bank.   The package was sealed when Webber first saw it and had a typewritten indorsement upon it, which he says he probably read over, though he had no recollection of reading it and did not recall the language that was used by Judge Cunningham when he referred to it or what was said as to whether the directions were to be followed.

The question of the delivery of the deeds depends upon the question of the intention of the grantors when they were delivered to Webber.   If they then intended to part with their custody and control and to have them take effect as conveyances they were delivered.   In view of the express purpose of making the deeds, of the discussion in regard to making the will, of the advice of the attorney as to the necessity of a delivery and of retaining no control over the deeds, of the typewritten indorsement on the envelope, which could have been placed there for no other purpose than to express the testator's intention, there can be no doubt as to the intention of John H. Hudson when the deeds were placed in the possession of Webber.   A subsequent change of intention could not affect the delivery thus completed, and even a mental reservation of the testator contrary to that expressed by his words and deeds, existing only in his own mind, would not invalidate the delivery effected by his acts and the words actually used. The custodian, on the receipt of the deeds with the instructions of the grantors, held them for the benefit of the grantees, and he had no right to surrender them to the grantors and the grantors had no right to receive them. Webber did not surrender them to the grantors but they were obtained from another officer of the bank who had no knowledge of the original transaction and did not know what was contained in the envelope.   Unless the deeds were all delivered on July 27, 1912, none of them were ever delivered and John H. Hudson died intestate as to all his real estate except a life estate to his wife and the property

devised to Clifton and John M. Hudson by the fifth and sixth clauses of his will. The will recognizes the delivery of the deeds as an accomplished fact, but the language of the will did not itself constitute a delivery or a devise. The will speaks only from the testator's death and was subject to revocation during his lifetime. It does not purport to devise the land in accordance with the terms of the deeds, but, after stating that the deeds had been made, executed and placed in the possession of a custodian, to be delivered to the grantees after the death of the grantors, it urges upon his children acquiescence therein without words of complaint or thought of injustice and declares the deeds delivered and titles conveyed. If they had not, in fact, been delivered in the testator's lifetime, then the statement of the will did not change the fact, and, speaking from the testator's death, did not complete a delivery which was incomplete in his lifetime.

The direct evidence as to the contents of the deed is somewhat vague and uncertain. No one testified directly to the contents. No one testified who had read the deed except Judge Cunningham, who drew it, yet the circumstantial evidence is sufficiently definite as to the property described in the deed. It is admitted that John H. Hudson and his wife owned about 665 acres of land in Champaign county and some lots in the city of Urbana. They undertook to dispose of all of this property by their deeds. Hudson's will stated that he had partitioned all of his real estate among his children by these deeds. It is not claimed that the other six deeds do not dispose of all of this property except the 80 acres and the lots claimed by the appellees. Therefore, if the deeds disposed of all of the property of Hudson and his wife, the deed to Clifton must have disposed of the 80 acres and the lots. The terms of the deed are not capable of such definite proof. All the deeds were drawn on the same form, they were all ordinary statutory warranty deeds, and each contained the recital

of the execution of the other six deeds in substantially the language which has already been given. This language had no effect to limit the estate granted to less than a fee simple. The statement that a life estate, only, was intended, and that should the grantees die before the death of the grantors, or at the death of the grantees, the title should vest in their legal heirs, had no such effect. Under the rule in *Shelley's case* such an estate is a fee simple in the first grantee. So the limitation that the grantee in his lifetime should not make any disposal of the fee and that his interest should not become liable for his debts was of no effect, because such a condition cannot be attached to a conveyance in fee. The recital, therefore, had no effect on the estate granted and was only expressive of the purpose of the grantors in making the deeds. Clifton A. Hudson, being one of the seven children to whom deeds were made, was a grantee in this destroyed deed, and the estate granted to him was a fee simple unless there was some language in the deed limiting it to a less estate or some charge imposed upon the estate. One of the six deeds which have not been destroyed limited the remainder after the life estate to the grantee to his son by name, and another required the payment of $1000 by the grantee. There was no evidence that there was any such limitation or charge in the deed to Clifton, but the appellees have not produced any evidence that there was not, and in this respect the evidence is uncertain. However, this deed was taken by the grantor, without authority, from the custodian, who held it for the grantee, and has not been produced. In view of all the circumstances shown in the case it was probably intentionally destroyed by the grantor for the purpose of destroying its effect as a conveyance. The defendants are volunteers, claiming through the grantor, and have no greater rights than he had. It is a rule of evidence that everything will be presumed against the despoiler. Where a party to a suit has intentionally destroyed material evidence in a case every

presumption will be indulged against him. This presumption does not relieve the opposite party from the burden of proving his case, but it does have the effect, where the evidence is vague and uncertain, of raising a presumption against the party who has destroyed the evidence which would make the facts clear. In this case it is shown that Hudson and his wife executed a warranty deed of certain property to Clifton and that subsequently the grantor destroyed it. Now, shall the grantor's heirs retain the property which clearly has been conveyed away from them, because by the wrongful act of the grantor the grantee is unable to show that there were no limitations in his deed? In such a case the presumption is against the grantor that the deed was absolute. If it were not absolute he had it in his power to produce the evidence showing the conditions. Having destroyed it, it is he who must suffer the inconvenience from the loss of the evidence and not the grantee. When the grantee has proved that the deed was executed, the presumption is that it conveyed the highest title it could convey,—that is, a fee simple.

While the appellants here are not shown themselves to have been guilty of the destruction of the deed they are in no better position than the grantor and testator. If the suit had been against him the presumption against the despoiler of evidence would prevail, and his voluntary grantees are in no better position. "The presumption *in odium spoliatoris* is perfectly legitimate. It is so natural and so just that it is a part of every civilized code." (*Bryant v. Stidwell*, 24 Pa. 314.) The familiar illustration of the nature of the presumption is found in *Armory v. Delamirie*, 1 Strange, 505, (1 Smith's L. C. 7th Am. ed. 636,) where a chimney sweep having found a jewel took it to the shop of the defendant, a goldsmith, to learn what it was. The stones having been removed the goldsmith offered the sweep a small sum in payment, and upon his refusal to accept such payment gave him back the socket

without the stones. In an action of trover the jury were instructed "that unless the defendant did produce the jewel and show it not to be of the finest water they should presume the strongest against him and make the value of the best jewels the measure of their damages, which they accordingly did." In regard to the suppression of documents the rule was stated in *Rector* v. *Rector,* 3 Gilm. 105, to be, that when a party refuses to produce books and papers his opponent may give secondary or parol proof of their contents, if they are shown to be in the possession of the opposite party, and if such secondary evidence is imperfect, vague and uncertain as to dates, sums, boundaries, etc., every intendment and presumption shall be against the party who might remove all doubt by producing the higher evidence. In *Anderson* v. *Irwin,* 101 Ill. 411, (a bill to establish a will which had been destroyed by some of the defendants after the testator's death,) it was held that all that could be required of the complainant, under the circumstances, was to show in general terms the disposition which the testator made of his property by the instrument; that it purported to be his will and was duly attested by the requisite number of witnesses. The court said: "In view of all the facts we think the maxim *omnia præsumuntur contra spoliatorem* may properly be applied to this case. In applying this maxim the rule seems to be well settled that where one deliberately destroys, or purposely induces another to destroy, a written instrument of any kind, and the contents of such instrument subsequently become a matter of judicial inquiry between the spoliator and an innocent party, the latter will not be required to make strict proof of the contents of such instrument in order to establish a right founded thereon. In such case slight evidence will suffice.—Broom's Legal Maxims, 576."

The appellants insist upon the rule that parol proof of the contents of lost deeds must be so clear and positive as to leave no reasonable doubt of the substance of the ma-

terial parts of the paper, and cite among other cases, *Dagley* v. *Black,* 197 Ill. 53, where it is said: "When parol proof of the existence and contents of a lost deed is offered as the only evidence thereof, the witness must have seen and read it and be able to speak pointedly and clearly as to its tenor and contents, and to state whether it conveys a fee simple, a life estate or a term for years, and whether it in fact was executed by the supposed grantor." This language was appropriate to that case, but it is too broad in laying down a rule of universal application which ignores the presumption against the destroyer of evidence and would exclude proof by circumstantial evidence, no matter of how great a degree of certainty. The rule as to the certainty required in the proof, by parol, of lost or destroyed documents must be considered in connection with the maxim that everything will be presumed against the despoiler, otherwise, as suggested in *Anderson* v. *Irwin, supra,* the rule would often be the means of denying any relief to a complainant where the opposite party had destroyed evidence against him.

It is contended by the appellants that the delivery of the deed to Webber to be delivered to the grantee created no vested interest at that time in the grantee; that if it was to be delivered by Webber to the grantee after the death of both Hudson and his wife it was not effective to pass the title until both were dead, and that, since it was expressly provided that it should only take effect after their decease, it was a testamentary disposition of property. In *Shackelton* v. *Sebree,* 86 Ill. 616, it was held that a deed containing the following recital by the grantor: "This deed not to take effect until after my decease,—not to be recorded until after my decease," was effective as a present conveyance of the fee after the grantor's death and that no particular estate of freehold was necessary to support it. A grantor may convey the fee in his land beginning at a future time, and the time of the commencement of the

estate may be fixed by his death or may be at any arbitrary date before or after his death, or may be fixed by reference to such circumstances as the grantor may choose. Subject to the fee thus granted the grantor will retain for himself and his heirs and grantees the ownership of the land and the right to possess and use it. So in *White* v. *Willard,* 232 Ill. 464, a deed was held to convey the fee in which a life estate was reserved to the grantor and his wife, and it was expressly stated that the title of the grantees should become absolute only upon the death of both. A deed which states upon its face that it is not to take effect until the grantor's death will be sustained as a present grant of a future estate if it has actually been delivered, and it is not subject to the objection that it is a testamentary disposition of property. (*Harshbarger* v. *Carroll,* 163 Ill. 636; *Latimer* v. *Latimer,* 174 id. 418; *Bowler* v. *Bowler,* 176 id. 541; *Hathaway* v. *Cook,* 258 id. 92.) Where a deed has been delivered as an escrow, to be delivered by the depositary to the grantee upon the happening of a future event, it is not operative to convey the title until the happening of the event and until the grantee becomes absolutely entitled to the second delivery. (*Grindle* v. *Grindle,* 240 Ill. 143; *Stone* v. *Duvall,* 77 id. 475; *Baker* v. *Baker,* 159 id. 394.) When that event occurs, however, the deed is good, and even the death of the grantor or of the grantee in the meantime will not defeat the delivery, which will be held by relation back to the first delivery to have taken effect from that time so as to vest the title in the grantee. (*Stone* v. *Duvall, supra.*) The delivery by the grantor was complete upon the first delivery with no condition attached except that the deed was to be delivered to the grantee upon the death of the grantor and his wife. The dominion and control of the grantor over the deed was gone, and though he afterward may have actually regained the physical possession of the instrument he could not rightfully or ef-

fectually assume or exercise any control over it. *Munro v. Bowles,* 187 Ill. 346.

The appellees were not in possession of the property in controversy and it was not vacant or unoccupied, and it is therefore argued that the bill cannot be supported as a bill to remove a cloud from the title. When the bill was filed the appellees were not entitled to the possession, but a court of equity has jurisdiction to require the heir of a grantor whose unrecorded deed has been destroyed to execute a new conveyance. *Bennett* v. *Waller,* 23 Ill. 97.

The deed to Clifton A. Hudson was a gift, but equity will not for that reason deny any relief. Equity will not aid a volunteer to carry into effect an imperfect gift or correct a mistake in or decree the specific performance of a contract not based upon a valuable consideration, but where a gift of real estate has been perfected by a legal conveyance, the property rights thus acquired will be protected and enforced. The delivery of the deed by the grantor was complete, and so was the grantee's right to have it remain in the possession of the custodian until by lapse of time the grantee became entitled to it. This was a property right, of which the grantee could not be deprived, and in seeking to have the deed restored he is not asking to have an incomplete gift completed but to recover his property. Whether the appellants had notice of the deed or not is not material, for while, as devisees, they are purchasers, they are not purchasers for value but mere volunteers.

Mrs. Hudson died during the pendency of the suit and her death was suggested. No supplemental bill was filed, as would have been the proper practice, but the irregularity is not of such importance as to affect the validity of the proceedings. By her death the appellants became entitled to the possession of the deed, and the decree, which directed the execution and delivery of a deed conveying the property in controversy to them, was right. It is affirmed.

*Decree affirmed.*