(No. 21110.—

THE WESTERN ELECTRIC COMPANY, INC., Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(FRANK NOVELLI, Defendant in Error.)

*Opinion filed June 24, 1932.*

CUTTING, MOORE & SIDLEY, (JAMES F. OATES, JR., and PHILIP H. SCHOFIELD, of counsel,) for plaintiff in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Defendant in error (herein called defendant) was awarded compensation against plaintiff in error (herein referred to as the company) for an accidental injury sustained by him on December 7, 1929, the award being for $140 for seven weeks' temporary total incapacity to work and $179 for medical and hospital services. The award was confirmed by the Industrial Commission, and on July 17, 1931, the circuit court of Cook county confirmed the award of the commission. This court has allowed a writ of error.

Defendant is an Italian. He does not understand or speak English. His testimony was given through an interpreter. He was employed by the company in March or April, 1929, and worked for it continuously from that time to the day of his injury. The evidence shows that he was examined by a physician for the company before he was employed to work for it; that the company has a rule which requires all applicants for employment to undergo a physical examination, and has another rule that no person with a hernia will be employed by it to do the kind of work that defendant was employed to do. The parties made a stipulation substantially to the effect "that if this case was compensable" the award of the arbitrator and of the commission was properly sustained by the court.

The testimony of the defendant is substantially the following: His hours of work were from about six o'clock in the evening to five o'clock in the morning. His work was soldering condensers, and as an incident of his work it was necessary to lift and carry boxes containing radio batteries. Prior to December 7, 1929, his health was good and he felt well. About four o'clock on that morning he asked a fellow-workman, Rasmus Tjonneland, to help him carry a box of radio batteries weighing more than 100 pounds. As they were lifting the box defendant's foot slipped. He felt sharp pains in the region of his groin. He dropped the box and became so sick that he was unable to continue work. He told his "boss," Frank Stasik, that he was hurt and sick and wanted to go to the hospital. Stasik told him to go home if he did not feel well. He went to the toilet and vomited, and then tried to work but could not. He was accompanied home that morning by a fellow-workman, Ernest Mojzis. He called Dr. Chesrow the next day to treat him. He returned to work December 23, 1929, and worked that night but has not worked since. Dr. Chesrow treated him two or three times between December 7 and December 23, and on December 25, 1929, he entered Mother

Cabrini Hospital, where Dr. Chesrow performed an operation on him. Prior to December 7 he had an injury to his right foot that caused him pain but never prior to that date had pain in his groin.

The testimony of Ernest Mojzis, for defendant, is to the effect that on December 7, 1929, he was working at the factory for the company, "two benches away from defendant;" that he did not see defendant lifting any boxes but he came to witness and complained of his foot, that he felt bad and was sick, and asked witness to tell the boss that he was sick and wanted to go to the hospital; that witness went home with defendant that morning, who walked with difficulty, and that he went down the steps with one hand on the rail and the other hand "holding onto witness."

The testimony of Dr. Eugene Chesrow is substantially as follows: He is a graduate of Chicago College of Medicine and Surgery and has practiced medicine for fifteen years and surgery for ten years. He is senior surgeon of the Mother Cabrini Memorial Hospital. He was called to see defendant in December, 1929, at that hospital. He examined him and found he had a right inguinal hernia, with the sac protruding about an inch below the external ring, and an enlarged external ring on the left side. The right external ring was sore, with some induration and local swelling. His digital exploration was very painful to defendant. He advised an operation and performed it on December 27, 1929, to relieve the hernia. He found on the right side a moderate-sized sac, possibly three inches long, very thin and "veil-like," containing some serum and evidence of bleeding. He also found a small enlargement of the external ring of the left inguinal canal without any protrusion but did not operate on that side. His opinion was that the hernia on the right side was not congenital but was of recent and traumatic origin. He further stated that he performs at least one hernia operation a day and has operated on about 4000 persons for hernia; that it is

very easy to distinguish a congenital hernia from a traumatic hernia; that in a congenital hernia the sac leads down to and includes the covering of the testicle, and that in an acquired or traumatic hernia there is found a definite ending of the sac proper and ending above the testicular covering.

Rasmus Tjonneland testified for the company, in substance, that he worked about three feet from defendant on the night of December 7, 1929, at the same bench and did the same kind of work for the company. "Nothing happened on that night especially, except that we worked along that night just like any other night." Defendant did not tell him that night that he had pains in his side. The last time he saw defendant was just before quitting time. He was limping and said he had had a bad foot for three or four weeks. Witness cannot say whether or not defendant went to the wash-room that night, "because I mind my own business." Defendant went home just before the whistle blew, and was limping. Witness does not remember the box defendant was lifting that night "because he always called him when he wanted help." He did not hear anything that morning about defendant being hurt, "except about his foot."

The testimony of Frank Stasik, the supervisor of the company for six and one-half years, is to the effect that defendant worked in his department for about eight months, beginning March or April, 1929; that on December 19 witness had a conversation with him in which he stated that he had asked for a hospital pass and that witness had refused to give it to him; that witness told him that he had not asked for a hospital pass and had not said anything on that day about injuries of any kind; that Mojzis did not ask for a pass for defendant; that witness never refused anyone a pass, as he had strict orders to give passes; that the first time he knew anything about what happened to defendant on December 7 was on December 19, and that

about two weeks prior to December 7 defendant told him he had a sore foot.

The testimony of three employed physicians and surgeons of the company, Thomas A. Morrison, H. O. Lindholm and Frank L. Smith, is substantially the following: They are graduates of medical schools. They examined defendant and found that he had on both the left and right sides complete inguinal hernias, the one on the right side being about the size of a silver quarter and the other the size of a nickel. He complained to them of an injury to his foot. They found no evidence of such injury but found the external ring on the right side somewhat enlarged; that the external ring on the left side was about normal, and so far as they could determine neither ring was torn. There was no swelling or tenderness, although the inguinal canal was larger than normal. They stated that twelve or fourteen days after a traumatic hernia there should be found tenderness, swelling and pain on examination, and that the absence of such conditions would indicate that such hernia was of long standing and had existed long before December 7, 1929. They gave it as their opinion that the condition in which they found defendant was inconsistent with the finding that he had or had had traumatic hernia, and that his hernias were congenital—i. e., had existed from birth. Dr. Morrison has practiced medicine and surgery since 1926. Defendant was called before him for examination for hernia on December 19, 1929, because he had been ill and absent and had not had such an examination within the six months preceding that time, as required by the company. Dr. Lindholm graduated from a medical college in 1916. He is on the staffs of the Martha Washington and Belmont Hospitals. He examined defendant on December 19, 1929, and found no injury to his foot, no hernia and no impulse. He again examined him on December 21, 1929, and found that he had inguinal hernia. It was his opinion that defendant's hernia was of longer duration than six

months and that it could hardly be of less standing than three months; that a digital examination of a patient having traumatic hernia would be accompanied by considerable pain and marked tenderness, and that the absence of such symptoms would indicate that the hernia was of long standing. Dr. Smith was licensed to practice medicine and surgery in 1908. He stated that it is possible in traumatic hernia for the pain to subside in less than from four to six weeks "but unlikely, although anything is possible." He stated that the reason for his opinion that defendant's hernia was not of recent origin was that he had a small, complete hernia on both sides, with no history, so far as he learned, of any pain on the left side; that the rings were paper-like and partially dilated; that there was no swelling or induration around the rings that would indicate that there had been any injury to those rings. All of the physicians had performed, or had assisted in performing, operations for hernia.

Dr. Cecil T. Job, professor of anatomy at Loyola School of Medicine, who never had examined defendant, testified for the company as an expert, that the finding on operating for hernia of a veil-like sac with some fluid in it would not indicate that the hernia was of traumatic origin rather than congenital; that intense pain, associated with nausea, was typical of traumatic hernia, and the fact that on examination a hernia is found at one time and not found on examination at another time "indicates a typical condition found in congenital hernia." He stated that if the peritoneum and the gut are forced through the internal ring and the external ring by trauma it would necessitate the tearing of muscles, and would be accompanied by intense pain and cause tenderness in the rings and the muscles surrounding the rings. He further stated that he had never practiced medicine and never had a medical degree.

Dr. Chesrow, as a witness for the company, stated that he is a brother of D. S. Chesrow, one of the attorneys in

this case. He identified the operative chart signed by him at the hospital. That chart shows that he operated on defendant and that his trouble was diagnosed as a right inguinal hernia and chronic appendicitis, and that the operations performed were "Bassini herniotomy and appendectomy, thin sac." Another portion of the hospital chart was offered in evidence by the company, over the objection of defendant, reading as follows: "Personal history, December 27, 1929: Chief complaint, hernial protrusion on right side. Onset and cause, patient states that he has been troubled with a hernial protrusion for the past few months but at the present time it seemingly is troubling him more than usual. There is an accompanying pain in the region affected."

The contention of the company is that the evidence is insufficient to sustain the award of compensation because it does not show that defendant sustained an accidental injury arising out of and in the course of his employment and that it does not meet the requirements of the statute for recovery of compensation for hernia. It is argued that there is no evidence to support the testimony of defendant that he was injured while at work on the morning of December 7, 1929. His evidence is supported by the testimony of Mojzis, to the effect that defendant complained of suffering pain and that he could only walk with the assistance of Mojzis. Tjonneland corroborates defendant by similar evidence. When it is considered that defendant is an Italian, who does not understand or speak the English language, it is not difficult to understand that he, while suffering acute pain, did not and could not make known to others the exact nature of his suffering. It does not appear that either Mojzis or Tjonneland understands the Italian language, and their names would not indicate that they are Italians or of Italian descent. Dr. Chesrow examined defendant shortly after the injury and performed the operation for hernia, and his opinion is therefore of greater weight on the ques-

tion of the origin and age of the hernia than are the opinions of the other doctors who testified for the company. Although the company's doctors differed radically in their opinions in some respects on theories not material in the settlement of this case, it must be admitted that Dr. Chesrow's testimony shows very clearly that defendant was suffering from a hernia of recent and traumatic origin, because he testifies as to symptoms and conditions of the patient that all the doctors admit were the exact symptoms of that kind of hernia.

Paragraph (d-1) of section 8 of the Workmen's Compensation act provides that an injured employee in order to recover compensation for hernia must prove (1) that the hernia was of recent origin; (2) that its appearance was accompanied by pain; (3) that it was immediately preceded by trauma arising out of and in the course of the employment; and (4) that the hernia did not exist prior to the injury. It is our opinion that the findings of the arbitrator and of the Industrial Commission and of the circuit court in this case establish the four facts mentioned in the statute, and that it cannot reasonably be said that their findings are manifestly against the weight of the evidence in the record. The objection to the admission of the hospital record entitled "Personal history" should have been sustained by the court because no proper foundation was laid for its admission. Even if it were admissible we deem it of little weight in view of the other evidence in the record. It is clear that that record does not contain any language used by defendant to the person or persons making the record, and that that record merely contains the conclusions of such authorities based on complaints made by him as to pain and suffering that he was then undergoing and that he had similar pains for some time before. The record shows that in addition to his hernias he was, and had been before that, suffering from the pains of chronic appendicitis, which were

necessarily in the same region of his body as was his traumatic hernia on the right side of his body.

Under numerous holdings of this court, the findings and conclusions of the Industrial Commission on questions of fact arising before it cannot be disturbed unless such findings are against the manifest weight of the evidence. Our conclusion is that such findings and conclusions are amply sustained by the weight of the evidence, and that the judgment of the circuit court confirming the same should be, and is, affirmed.

*Judgment affirmed.*