(No. 22198.—

THE FORD MOTOR COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(WILLIAM DUOTWAL, Defendant in Error.)

*Opinion filed February 23, 1934.*

SHANNON, MORRILL & JOHNSON, for plaintiff in error.

WERNER W. SCHROEDER, MURPHY O. TATE, and THEODORE W. SCHROEDER, for defendant in error.

Mr. CHIEF JUSTICE ORR delivered the opinion of the court:

An award of $16 per week for 300 weeks for complete and permanent disability and a pension of $32 a month thereafter for life was made in January, 1932, to respondent, William Duotwal, by an arbitrator of the Industrial Commission, under the provisions of the Workmen's Compensation act. On petition of the employer, the Ford Motor Company, the award was reviewed by the Industrial Commission and additional medical evidence there presented on behalf of the company. The Industrial Commission sustained the award of the arbitrator, and its order was in turn confirmed by the circuit court of Cook county. On leave granted, the case comes here for review by writ of error.

It was stipulated that respondent sustained an accidental injury arising out of and in the course of his employment on August 18, 1931, while petitioner and respondent were operating under the provisions of the Workmen's Compensation act; that notice was duly given; that respondent was then earning an average weekly wage of $40; that he had two children under the age of sixteen, and that $64 had been paid on account of the accident. The principal claim of petitioner is that the award for complete and permanent disability is supported only by doubtful or incompetent evidence.

Duotwal was injured while engaged, with other employees, in loading Ford radiators in a box-car. While he was stooping over to pick up a hammer he was struck on the head by a 28-pound radiator, which fell several feet from its stacked position in the car. The other employees did not see the impact but heard him exclaim, "O, Jesus!" and noticed that he was bent over with one hand on his head, which was bleeding profusely, while with his other hand he was reaching for a handkerchief. He said, "Grab me," and two fellow-workers took him by each arm and assisted him out of the car to the office of the company doctor, about 600 feet away. He walked to within about 100 feet of the office, and over this last distance his helpers testified they practically had to carry him, as he had collapsed and "was just like a dish-rag." The doctor treated his scalp wound, designated by him as a "cerebral concussion," about an inch and a quarter long, applied two skin-clips and had him removed to the hospital, where he remained three days. His wound had then healed and the doctor told him he should go home. He acted and talked strangely and refused to leave the hospital, saying that he should stay there two months because, as he said, he had no clothes. Later in the day he left the hospital himself, but due to his nervous condition he was returned in about two weeks for a second stay of ten days. He complained of dizziness and headaches but otherwise appeared well nourished and not acutely ill. The doctor said he had large eye-balls, due to a thyroid condition, but no tremors were noticed. Outside of reactions from the shock, with blood pressure running from 210 on the day of his injury to 180 on September 9, when he was again discharged from the hospital, his condition appeared normal to the company doctor. Later, when examined by four medical experts, his blood pressure was only 145.

On behalf of Duotwal it is principally argued, and with substantiation in the record, that following the blow on his

head a striking personality change took place; that he has been rendered useless for remunerative employment, and that the injury to his head has affected his mind, resulting in abnormal suspicion, distrust, self-assurance and hostility. This state of mind is usually described as monomania or paranoia. Prior to his injury in 1931, when he was aged forty, he had been a steady and reliable worker in the Ford plant for eight years. He had been regarded as hard working, jovial and optimistic, but Dr. Lownik, his family physician since 1925, testified that Duotwal's condition after his injury in 1931 was distinctly different; that he was highly nervous and irritable and would become startled at any noise; that he could not walk in a straight line, had a wild stare from bulging eyes, lacked co-ordination in speech, became discouraged and depressed, and had no interest in himself or his surroundings. Dr. Harold S. Hulbert, who had taught mental diseases for three years at the University of Michigan and nine years at the University of Illinois and who had been a psychiatrist at Great Lakes Naval Training Station and had examined or observed about 40,000 mental cases, also examined Duotwal in the presence of other doctors and testified as an expert in his behalf. It was his opinion that Duotwal is a paranoiac; that he will get worse and not better; that he cannot carry on work except simple tasks under supervision, and that his condition is permanent. One of petitioner's witnesses, Dr. John J. Thompson, of Hines Hospital, a specialist in psychiatry and nervous diseases, testified that Duotwal "is incapacitated from doing anything that is of a remunerative nature" and is suffering from traumatic neurosis. It is true that the testimony of these mental experts is opposed in certain respects by other testimony in the record, but this contradiction is not of such volume or character as would warrant a disturbance of the findings of the Industrial Commission. We have repeatedly held that the findings and conclusions of the Industrial Commission on

questions of fact cannot be disturbed unless they are against the manifest weight of the evidence. *Western Electric Co.* v. *Industrial Com.* 349 Ill. 139; *Cruzan* v. *Industrial Com.* 350 id. 407.

In our opinion the causal connection between the accident and Duotwal's incapacity for remunerative labor has been established by the evidence. Whether Duotwal was rendered totally unconscious at the time of his injury is not entitled to as much emphasis as petitioner has given it. Two of petitioner's own witnesses, however, testified that he was at least temporarily unconscious and "just like a dish-rag" shortly after the accident. Regardless of his unconsciousness and its relation to paranoia, there was sufficient evidence before the commission to sustain its finding of total and permanent disability. This was shown by the testimony of Dr. Thompson that Duotwal was suffering from neurosis which was traumatic in origin, and that "he is incapacitated from doing anything that is of a remunerative nature." We have held that an employee is totally and permanently disabled when he is unable to make some contribution to industry sufficient to justify payment to him of wages. *Edgell & Co.* v. *Industrial Com.* 353 Ill. 488.

It is the province of the Industrial Commission to draw reasonable inferences from the facts, and its findings will not be set aside unless manifestly against the weight of the evidence. (*Old Ben Coal Corp.* v. *Industrial Com.* 351 Ill. 572; *Rissman & Son* v. *Industrial Com.* 323 id. 459.) No reasonable grounds exist here to set aside its findings. That there may be later improvement in Duotwal's condition does not defeat the award. If there is such improvement the employer has its remedy under the act by appearing and asking for a modification of the award. *Postal Telegraph Co.* v. *Industrial Com.* 345 Ill. 349.

The judgment is affirmed. *Judgment affirmed.*