(No. 23660.—

THE INTERNATIONAL SALES COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(EDNA FITZHENRY, Plaintiff in Error.)

*Opinion filed February 12, 1937.*

McKenna, Harris & Schneider, (Abraham W. Brussell, of counsel,) for plaintiff in error.

Cassels, Potter & Bentley, (Ralph F. Potter, and Claud D. Raber, of counsel,) for defendant in error.

Mr. Justice Shaw delivered the opinion of the court:

The Industrial Commission awarded Edna Fitzhenry compensation for the permanent fifty per cent loss of use of one leg, plus medical bills of $250 and a hospital bill of $410.70, and also compensation for temporary total incapacity for the period of 67 and 1/7 weeks. On *certiorari* the superior court set this award aside, and the cause is before us by writ of error, on leave granted.

Briefly, the facts are as follows: In the spring of 1927, while Edna Fitzhenry, who worked under the name of DeVeaux, was a resident of Newark, New Jersey, she answered an advertisement in a local paper for a sales lady and met L. F. Kelly, a "crew manager" for the International Sales Company. She testified that Kelly told her he would take her name and address and would let her know in a couple of days whether or not he could hire her; that the company was particular about who worked for it and

that he would have to get her credentials from Chicago, or words to that effect; that some days later she came back and Kelly told her it was all right and gave her credentials to solicit magazine subscriptions. The paper which Kelly delivered to her was as follows:

"INTERNATIONAL SALES COMPANY, INC.
Publishers' Representatives
608 So. Dearborn St., Chicago, Ill.
*Special Cash Prize Offer.*

"This is to Certify That the Bearer Miss Edna DeVeaux (whose signature appears below) is taking advantage of our special cash prize and is authorized to secure points by obtaining orders for new and renewal subscriptions to all publications as per our official receipts. Two thousand points within twelve weeks' time entitles the bearer to a cash prize of $500.00. Investigation shows the bearer is of good character and reputation, therefore worthy of the reward offered. Any courtesies extended will be greatly appreciated.

(Special Notice—Do not hesitate to give our representatives your subscriptions. We guarantee promptly to fill all orders as printed on our regular subscription cards.)

INTERNATIONAL SALES COMPANY, INC.

[Seal of     A. K. Smith, *Sales Manager,* (Signed)
International Sales Co.]  Miss Edna DeVeaux, (Signed)
             *Signature of Bearer*

"State of Illinois, County of Cook:

"On this, the......day of.............., 192..., personally appeared before me the sales manager and acknowledged the above as his free and voluntary act.

Julia C. O'Brien, *Notary Public,* (Signed)
[Notarial Seal]       Cook County, Illinois."

The record further shows that Kelly himself possessed a document from the International Sales Company making him a duly authorized "crew manager," and conferring upon him, among other things, the power to place advertisements for solicitors in newspapers, magazines, etc., and to employ assistant solicitors to solicit and collect for magazine subscriptions on behalf of the company but to in no way pledge the credit or incur any obligation on behalf of

the International Sales Company. After accepting the credentials above set forth, the plaintiff in error, with Kelly and other solicitors, worked through several cities in the East, including as the last one, Buffalo, New York, at which place she suffered a fall and severe injury to her leg. It is not questioned that the fall took place while she was working and in connection with her work, the only questions being as to whether or not she was employed by the International Sales Company and as to whether the contract of employment was made in the State of Illinois.

Alice K. Smith, secretary of the International Sales Company, testified as to the course of business of that company and as to its connection with Kelly. It was her testimony that any person who wished to buy subscription blanks came to the office of the company and paid cash in advance for them, whereupon they became his property, to do with as he pleased; that he could sell them himself or hire others to sell subscriptions, paying cash out of his commission, or pay those working for him on a commission basis; that Kelly purchased the subscription blanks with which he was working and was furnished with the purported appointment as "crew manager" which is mentioned above, and was also given a supply of credentials to be given to solicitors, such as the one received by Miss Fitzhenry; that these so-called credentials, which purported to be executed in Chicago after inquiry and on behalf of the International Sales Company, were, in fact, passed out in blank and never came back to Chicago for approval at all. She testified that when Kelly collected for the magazine subscriptions he did not transmit any money to the International Sales Company at Chicago but simply the sales records, with the subscribers' names and addresses; that after the order blanks had been sent to the International Sales Company that company then collected the balance due on the subscriptions, sending bills to those subscribers, asking

them to transmit the balance due, and the subscribers would remit to the International Sales Company direct. Kelly was not called as a witness and his absence was not accounted for. There is no other material evidence in the record except as to the nature and extent of the injury, which is not here questioned or argued. It was stipulated that the Columbia Casualty Company was the insurance carrier of the International Sales Company at the time of the injury.

In view of the written credential given to Miss Fitzhenry which is above set forth *in hæc verba,* we do not think the defendant in error can be heard to say that Miss Fitzhenry was not employed by it, and this leaves for our consideration only the question of whether or not the Industrial Commission could reasonably have inferred .from the evidence that the contract of employment was made in the State of Illinois.

In this connection two further facts must be noted. No explanation was offered of any reason for carrying insurance on employees if the course of business of the International Sales Company was as testified to by Mrs. Smith. In the second place, it was shown that the International Sales Company had gone out of business prior to the final hearing before the Industrial Commission, but it also appears that it was still in business when this case was started and while it was pending, and none of the corporate records or office records of that company were produced or offered in evidence to substantiate the testimony of Mrs. Smith as to the way things were done. If these records were lost or destroyed it happened during the pendency of this suit and should have been explained. If not lost or destroyed they should certainly have been produced on the hearing, and their absence under the circumstances permits a wide range of inference against the company. (*Hudson* v. *Hudson,* 287 Ill. 286.) It is the province of the Industrial Commission to draw reasonable inferences from proved facts,

and its findings will not be set aside unless against the manifest weight of the evidence. (*Ford Motor Co. v. Industrial Com.* 355 Ill. 490; *Board of Education v. Industrial Com.* 362 id. 263; *International Harvester Co. v. Industrial Com.* 354 id. 151; *Northwestern Wire Co. v. Industrial Com.* 353 id. 371.) In this case the commission was confronted with conflicting facts from which it had to draw inferences.

It is insisted that the testimony of Miss Fitzhenry was not clear, and that she evaded direct answers to questions as to her conversation with Kelly about his having to get her credentials from Chicago. The criticism is in some measure justified, yet that was the substance of her testimony and was obviously her understanding of the situation. Her testimony is also criticized because it appears that her counsel had filed claims for her in both New York and New Jersey and that she had at one time testified that she was employed in one of those States. These ancillary proceedings came to nothing through want of jurisdiction, because, notwithstanding its advertised claims that it had representatives everywhere it was found impossible to secure jurisdiction of the defendant in error in either of those States. We take it these claims were filed through an abundance of caution on the part of counsel, and that her testimony, whatever it may have been, could have been nothing more than a lay witness' conclusion on a difficult question of law. The Industrial Commission had its choice of relying on the formal documents issued by defendant in error under its corporate seal, or of disregarding those instruments and accepting the uncorroborated testimony of Mrs. Smith. The documents under seal were in the usual corporate form, except that they were a trifle more ornate and impressive than need be necessary. The photostatic copy in the record indicates that the certificate of authority given to Miss Fitzhenry was well calculated, and probably carefully designed, to impress the public, and it most sol-

emnly asserted that she had been investigated and the company assumed full responsibility for her actions. It might be unjust to the defendant in error to assume any intention to mislead Miss Fitzhenry or the public, yet such would be the inevitable result should we accept the testimony of Mrs. Smith and disregard the corporate instruments. This certificate of authority purported to have been issued in Chicago after a full and careful investigation. There was time for such an investigation between the two interviews the plaintiff in error had with Kelly. The course of business described by Mrs. Smith, involving a broadcast scattering of powers of attorney, which might result in serious financial consequences to the corporation, is so far out of line with ordinary corporate practice as to impair its credibility. If any such unusual authority was ever given to Mrs. Smith by the board of directors of the defendant in error, the corporate records would most surely have corroborated her testimony, but they were not produced. The unexplained absence of those records, which evidently disappeared while this suit was pending, would justify the commission in drawing an unfavorable inference against the defendant in error.

On this record we are unable to say that the findings of the commission were contrary to the manifest weight of the evidence, and on such a record it is the holding of this court that the judgment should be reversed and the cause remanded, with directions to reinstate the findings of the Industrial Commission. *Board of Education* v. *Industrial Com. supra; Ford Motor Co.* v. *Industrial Com. supra; Banner Tailoring Co.* v. *Industrial Com.* 354 Ill. 513; *International Harvester Co.* v. *Industrial Com. supra; Northwestern Wire Co.* v. *Industrial Com. supra.*

*Reversed and remanded, with directions.*