62 So.2d 37 (1952)
AMERICAN AIRMOTIVE CORP. et al.
v.
MOORE et al.
Supreme Court of Florida, Division B.
December 19, 1952.
Lawrence G. Lally, Miami, for appellant.
*38 Alexander S. Gordon, Miami, for Marguerite S. Moore, Marcia Lynn Moore and Michael David Moore.
Rodney Durrance, Tallahassee, for Florida Industrial Commission.
DREW, Justice.
This is an appeal from a judgment of the Circuit Court of Dade County affirming an order of the Florida Industrial Commission, which affirmed an order of the Deputy Commissioner ordering payment of compensation benefits to the widow and children of Edwin T. Moore, who was killed in an automobile accident in the early morning of November 14, 1950.
The deceased was an employee of American Airmotive Corporation. The business of the employer was the repair and maintenance of aircraft. Its business was located on the premises of the Miami International Airport Depot, in Miami, Florida. In addition to his duties as superintendent of maintenance the deceased was subject to call at all times on company business and was furnished an automobile and gasoline to operate it. There were no restrictions on the purposes for which he could use the automobile. His duties often required him to deal with, placate and entertain customers and prospective customers.
One George Schuck had delivered his aeroplane to Miami for an extensive overhaul and had employed the deceased's employer for such purpose. Apparently the repairs had been delayed, and on November 13, 1950, Mr. Schuck flew to Miami from Puerto Rico to learn the cause of the delay and to see what could be done to expedite the overhaul. It fell to the lot of the deceased to placate Mr. Schuck and to entertain him. They had dinner together that evening, bowled and talked business until the early morning hours, when the deceased left Mr. Schuck, stating prior to leaving that he was going by the gasoline pump on the employer's premises en route to fill his tank as he doubted he had enough gasoline to drive to his home.
The thread of events is next picked up at the gates leading to the gasoline pumps on the grounds of the employer. There, a short time after the deceased left Mr. Schuck, two policemen were parked. They testified that they heard an automobile approaching at high speed. It slowed down, ran slightly past their parked automobile, which, according to the record, had nothing thereon to identify its official nature, backed up even therewith, and then continued in the same direction it had been going. There was no indication from the evidence that the officers could have been identified by the deceased as such. The officers stated that they turned their automobile around and followed deceased's automobile which, they say, was going at least eighty miles per hour, for a distance of about one mile to a sharp curve in the road that led to a temporary bridge across a canal. The bridge was 1.1 miles from the gate where the officers first observed the deceased's automobile. The automobile of the deceased failed to negotiate this curve and went into the canal, resulting in the death of the deceased from drowning.
It is conceded by appellants that up to the point that the deceased reached the gate on the premises of his employer, which led to the gasoline pump  the place where the police officers were parked  the employee was engaged in the business of his employer. This entire controversy arises out of the events which took place within a minute or two thereafter.
The appellants contend (1) that after the deceased left the gate he was proceeding in an opposite direction from his home, away from the site of his employer's business, that he had not been directed to perform any mission of his employer in the direction he was traveling and that therefore his death did not arise out of and in the course of employment; and (2) that the death of the deceased was caused primarily by his willful refusal to observe a safety rule required by statute, viz.: the speed law.
Why the deceased did not stop at the gate and fill his automobile tank and why he acted as he did are questions that will never conclusively be answered. The answers were lost forever when the lips of Moore were sealed in death. One could *39 speculate at length and there may be a thousand answers  one as good as another. The Deputy Commissioner, after reviewing the evidence at length, concluded that, and we quote from his excellent and exhaustive award: "The only plausible explanation to the undersigned Commissioner is that the deceased employee became frightened when he saw a car parked at the gate with two men in it, and there was no indication from the testimony that the two men could have been identified as officers, and, from that fright, proceeded on west from M.I.A.D. gate and became confused and lost * * *." This is as good an explanation as any and there is evidence in the record from which such deductions could be based. If that is what happened, it would not have removed the deceased from the course of his employment. 71 C.J. 667-668, Par. 408; Globe Indemnity Co. v. Legien, 47 Ga. App. 539, 171 S.E. 185.
Holding, as we do, that the Commissioner had before him facts upon which it could be reasonably inferred that the deceased was engaged in the employer's business at the time of his death, our holding in the case of Sanford v. A.P. Clark Motors, Inc., Fla., 45 So.2d 185, is decisive of the first contention of the appellants. We hold that the reasons advanced and the conclusions reached in the following quotations from that case are controlling here, text 45 So.2d 187-188:
"In proving that an accident took place in course of one's employment a claimant is not bound by the preponderance of evidence rule or the rule of proof beyond and to the exclusion of a reasonable doubt as in criminal cases. He is required to prove or show a state of facts from which it may be reasonably inferred that the deceased was engaged in the Master's business when the accident took place. This inference is not overcome by the mere showing that deceased was killed after he had departed only a few miles from the direct route leading from Orlando to Cocoa. The tags on the automobile engine and the instructions given the deceased before he started on his mission are confusing but he was required to leave Orlando for Cocoa on a detour from the direct route so the fact that he was killed on another road only a few miles off the detour is far from proof that he had abandoned his Master's business and was engaged in one of his own, there being no other proof to support such a conclusion.
"For all the record discloses the deceased may have inadvertently missed his way departing from Orlando and was killed in the accident before he discovered he was on the wrong way. Even if he had confused his instructions and had gone to Wildwood before he discovered the error and had then turned back to Cocoa, he could not be said to have departed from his Master's business. It is common knowledge that the most cautious will sometime take the wrong road when traveling by motor and proceed many miles before they detect they are on the wrong road.
"This court is committed to the doctrine that when a serious injury is conclusively shown and a logical cause for it is proven, he who seeks to defeat recovery for the injury has the burden of overcoming the established proof and showing that another cause of the injury is more logical and consonant with reason. Crawford v. Benrus Market, Fla., 40 So.2d 889. The proof of appellees falls far short of this standard. No other rule could possibly give the force and effect to Workmen's Compensation that the makers purposed for it. Even in doubtful cases the doubt should be resolved in favor of the claimant."
As to the second contention of appellants, we have carefully read the testimony of the police officers relating to the speed of deceased's automobile and have considered it in the light of the facts revealed by the Commissioner's visit to the scene, his diagram showing the varying distances between pertinent points on the road leading from the gate to the scene of the accident, and other evidence. *40 We agree with the findings of the Deputy Commissioner as affirmed by the full Commission and the learned Judge below that the deceased did not willfully refuse to observe a safety rule required by statute, viz.: the speed law which, in that place, was 50 m.p.h. The case of Gregory v. McKesson & Robbins, Inc., Fla., 54 So.2d 682, cited by appellants as authority for their position on this question is not decisive because, in that case, the Deputy Commissioner determined as a matter of fact that the appellant was violating the statute at the time of the accident, while in this case the exact opposite is true. Therefore, the firmly established principle of law that the findings of fact of the Commissioner, where there is substantial competent evidence in the record to support such findings, will not be disturbed by us, disposes of this question contrary to the contentions of the appellants.
Affirmed.
TERRELL, Acting Chief Justice, and MATHEWS and ROBERTS, JJ., concur.