TERRELL, Acting Chief Justice.
Alice E. Olsen, the claimant, is the widow of Gordon Olsen who was an employee of Winter Park Racquet Club. On June 6, 1960, Olsen went to work for his employer as was his custom and later in the morning he was found dead in the chlorinating room, a small room about S' x 6' in size, on the premises of his employer. Mrs. Alice E. Olsen filed claim for benefits under the Workmen’s Compensation Act. The claim was heard by the deputy commissioner who on February 20, 1961, entered an order awarding benefits to Mrs. Olsen including funeral expenses, costs and attorneys’ fees. On appeal the case was reviewed by the full commission who on October 17, 1961, reversed the order of the deputy commissioner on the theory that .there was no substantial competent evidence which accords with logic and reason to support the finding of the deputy commissioner that Olsen's death resulted from an accident arising out of and in the course of his employment.
We are confronted with an appeal by certiorari from the order of the full commission.
Two questions are urged for consideration. (1) Was Olsen’s death the result of an accident arising out of and in the course of his employment? (2) Was there competent substantial evidence showing that Olsen did not come to his death by suicide?
We treat these questions together. The employer and carrier contend (1) that Olsen did not come to his death by accident aris *7 ing out of and in the course of his employment and (2) that Olsen’s death was occasioned primarily by his wilful intention to kill himself.
The evidence shows that Olsen had been an employee of respondent for approximately three years at the time of his death. He was originally employed by respondent as a yardman and tennis court caretaker. In addition to his duties as yardman and tennis court caretaker, he looked after chlorinating the swimming pool in the winter season. On or about May 6, 1960, Olsen’s duties were reduced at his request so that his only duty was looking after the tennis courts which he could accomplish in one-half day.
Early in the morning of June 6, 1960, some ladies were playing bridge on the patio near the chlorinating room. One of them detecting the odor of gas reported it to Mrs. Hall who was working in the clubhouse. Mrs. Hall called the lifeguard, Mr. Lyden, who came and when he got within 30 or 40 feet of the chlorinating room noticed the strong smell of gas. He knew how quickly chlorine gas acted on one so he called Atlantic Chemical Company who sent a man out with a mask to shut off the gas. The man arrived at the chlorinating room about 12 o’clock noon, forced the door open against pressure that he found was caused by the dead body of Olsen lying against the door which opened to the inside of the room.
Mr. Lyden called the police and after putting on a mask helped move the body of Olsen from the chlorinating room. Shortly thereafter officers from the sheriff’s office and the medical examiner came. The light in the chlorinating room did not function, neither did the fan which was frozen to the staff. Neither had functioned for some time. A representative from the sheriff’s office, the medical examiner and a consulting engineer made an examination. One of them, Mr. Fugere, turned off the gas and the other two went into the chlorinating room to see where the body of Olsen was. One of them, Mr. Young, also noticed the position of the wrenches on the gas tank connections, as well as some rags hanging on the wall.
The wrench on the valve at the top of the chlorine tank regulated the flow of chlorine to the pool. The opening of this valve caused the chlorine to travel a cable to the water mixer, then to the pool. The regulating wrench was at all times left on the valve at the top of the tank. The second wrench, a stillson, was located on a coupling nut, which nut would normally be disconnected to effect a change of tanks. The coupling nut was loose orie-quarter of a turn and on bringing the stillson down one-quarter of a turn from the straight position, it would tighten the nut. It was through this loose connection that the gas was escaping.
The chlorinating room had two openings beside the door — one, a window, and the other a ventilating fan. It is shown that after the deputies, the gas man and the men from the engineering company had been several times in the chlorinating room, the windows and the exhaust fan were found to be covered with shirts which were first seen by the deputy sheriff from the outside after other trips had been made into the room by him and one of the engineers. The shirts were draped over the openings. Despite this condition, there was sufficient illumination in the room when the door was left open. Tests made by Atlantic Chemical Company, the engineering company, and Mr. Fugere showed that when the coupling nut was properly tightened, there was no leakage of gas from the cylinder. During the engineer’s examination it was observed that the flow indicator on the chlorine tank was not operating and they recommended that it be replaced.
For an injury to be compensable under the Workmen’s Compensation Act it must be shown to have occurred within the period of employment, at a place when the injured employee may have been reasonably expected to be and while he is reasonably fulfilling duties of employment or *8 engaged in something incidental thereto. Fidelity & Casualty Co. of New York v. Moore, 143 Fla. 103, 196 So. 495.
The statement of facts and evidence as above recited shows that Olsen’s death took place within the period of employment. He went to work at 8:00 A.M. The death certificate shows that his death took place at approximately 9 :50 A.M. while deceased was at work so there can be no question that his death took place within the period of employment and on the premises of his employer.
As to whether or not Olsen had a right to be in the chlorinating room at the time of his death, there is conflicting testimony. Competent substantial evidence shows that he kept some tools in the chlorinating room, so it may be reasonably presumed that he entered the chlorinating room to secure these tools to work with. It is further shown that Olsen was familiar with the working of the chlorinating machinery. He knew that the chlorine was essential to keep the pool clean and if he saw the gauge not registering he may have thought the tank was empty and attempted to change tanks. In turning the nut with the stillson wrench, there may have been a sudden escape of gas from which he could not or failed to escape. The doctor testified that chlorine gas acts extremely fast. Mr. Fugere testified that a whiff of it would cause dizziness. Since there were no eyewitnesses to the tragedy, we might from the evidence indulge other theories as to how Olsen came to his death. Since he was found dead on and went about the premises at will and no reasonable theory is shown for taking his own life, we find no reason for reversing the deputy for his finding on this point. This is all the more true since the deputy was governed by the substantial competent evidence rule and not by the preponderance of the evidence rule or the rule to the exclusion of a reasonable doubt. As we shall herein see, doubts must be resolved in favor of the claimant. Four Branches v. Oechsner, Fla.1954, 73 So.2d 222, 225.
It is true that § 440.26, Florida Statutes, F.S.A., says it will be presumed that the claim is within the provisions of said act, though it must be proven that it arose out of and in the course of his employment. Once the claimant has shown a logical cause for the accident, the burden then shifts to the employer to overcome the established proof and show that another cause of the injury is more logical and consonant with reason. Crawford v. Benrus Market, Fla. 1949, 40 So.2d 889, and Sanford v. A. P. Clark Motors, Inc., Fla. 1950, 45 So.2d 185. The deputy was warranted in drawing reasonable conclusions from the facts and the testimony. He is the only one authorized to do this. The full commission may affirm, reverse, modify or remand on the basis of findings by the deputy. It cannot do so on inferences or findings of its own.
This brings us to the question of whether or not Olsen came to his death by suicide.
The deputy commissioner found that Olsen did not come to his death by suicide. The statute, § 440.09(3), Florida Statutes, F.S.A., provides that no compensation shall be paid to one who intentionally takes his own life. The statute, § 440.26 (4), Florida Statutes, F.S.A., says that it shall be presumed that the injured employee did not intentionally take his own life. The evidence shows that Olsen was happy in his married life, was satisfied with his wife; he was engaged in long range plans for the future, had no neurotic or despondent tendencies; he and his wife were in good health and were planning things together; his normal state was happy and good na-tured; he had no pressing trouble and there is not the slightest showing of suicidal tendency.
Suicide was the primary dependence of the employer to defeat this claim. To support suicide, he relied on the shirts that closed the ventilator fan and the air vent and the fact that the death certificate showed “probable suicide.” It is shown that the doctor who made the death certificate knew *9 nothing whatever about the prior life and habits or motivating processes of the deceased. He apparently made the death certificate on the basis of what he saw in the chlorinating room and the condition in which he found the body of Olsen, yet the evidence shows that several people had passed in and out of the chlorinating room prior to the time the shirts were found by the deputy sheriff. Considerable time elapsed between the time the body was found and the shirts were discovered. There is not the slightest showing that the shirts were placed in the room by deceased or that he had any connection with them.
In this state' of the record, we find a complete lack of substantial evidence to overcome the presumption against suicide. Even if the evidence were close and cast a doubt on the point, under the Workmen’s Compensation Act, we would be required to resolve the doubt in favor of the claimant. Lyng v. Rao, Fla.1954, 72 So.2d 53; American Airmotive Corporation v. Moore, Fla.1952, 62 So.2d 37.
 After all is said, we are driven to the conclusion that the claimant has shown injury and a logical cause for such injury. The employer has not offered competent substantial evidence to overcome the presumption against suicide. The full commission appears to have arrived at a different conclusion by applying their own interpretation to the evidence and the facts confronting the deputy commissioner. This they are not authorized to do when the deputy commissioner’s findings are supported by competent substantial evidence. Construing such doubts as may be found to exist in favor of the claimant, we think the deputy commissioner was warranted in holding that Olsen came to his death by accident arising out of and in the course of his employment and that there was competent substantial evidence showing that he did not commit suicide.
The order of the full commission is quashed with instructions to restore the order of the deputy commissioner and grant the claimant compensation as authorized by the statute.
It is so ordered.
THOMAS, DREW and CALDWELL, JJ., and GOLDMAN, Circuit Judge, concur.