HOBSON, Justice (retired).
The petitioner is the widow of Robert E. Lee who at the time of his death was employed as a field supervisor by the Florida Industrial Commission. Mr. J. Douglas Hopkins, Chief of the Field Services of the Workmen’s Compensation Division, was Mr. Lee’s immediate superior. Hopkins testified that Lee was on assignment which would take him to Sumter County after he had made some preliminary telephone calls in order to determine in which sections of said County he should personally conduct his investigations.
Mr. Lee was found dead in his workshop about noon on a universally recognized work day, to-wit: Tuesday, July 7, 1959. His workshop was located in the garage adjacent to his home. He was found lying on the floor of the workshop with a bullet wound in his head. The bullet had been discharged from a .22 caliber pistol. This pistol was discovered on the floor and one cartridge had been fired from it. A .38 caliber pistol which had not been discharged was found on the work bench. This fact, we think, is quite significant. One intent upon taking his own life, and experienced as was Mr. Lee in the use of firearms, would assuredly choose the lethal power of a .38 caliber pistol rather than chance the doubtful result of the use of a firearm less powerful.
There was a vise attached to the work bench and, according to the testimony, Lee often used it to hold his pistol while he was in the process of cleaning it. This procedure was made necessary by virtue of the fact that he had previously lost his left hand. There was a telephone in the workshop located about three steps from the position in which Lee would stand while cleaning a pistol or inspecting it. There was a note pad next to the telephone upon which he had obviously made notes in connection with the telephone calls required to be made under his work assignment on that day. Mr. Lee had told his wife that he was going to spend Tuesday morning making telephone calls to secure necessary information preliminary to going to Sumter County. That he did so is quite evident. Mr. Hopkins, who was Lee’s immediate superior, testified that it was a common practice recognized by the Department for men in Lee’s position to make these calls from their homes rather than from the office of the Industrial Commission. Hopkins explained that this method was not simply one of convenience but was more expeditious than attempting to use one of the telephones in the office because of the fact that the office phones were usually kept very busy by other personnel.
The annual State convention of the Florida Peace Officers Association was to be held at Orlando July 20-22, 1959. It had been the prevailing custom for Mr. Lee to attend these annual conventions and take part in the pistol range competition. This fact was known to his employer, was encouraged by his immediate superior and his expenses had always been paid by the Florida Industrial Commission. Lee attended the Florida Peace Officers Association conventions because, as Mr. Hopkins testified, in fraternizing with the peace officers of the State Lee built good will for the Department and made his own work more effective. At least this was Hopkins’ thought as expressed in his sworn testimony. Let it not be forgotten, Hopkins was Lee’s boss. It matters not that Chief Buchanan, President of the Florida Peace Officers Association, took issue with Hopkins on this point. Chief Buchanan was not Lee’s supervisor, nor did he have anything to do with policy making with regard to the work of the employees of the Field Services Department, Workmen’s Compensation Division of the Florida Industrial Commission.
Mrs. Lee’s claim for death benefits was controverted by the carrier, The Travelers Insurance Company. The asserted de *270 fenses were: First, Lee committed suicide; second, that if his death was the result of an accident such accident did not arise out of nor take place during or in the course of his employment.
The Deputy Commissioner made the following findings:
“1. I find that Mr. Hopkins had knowledge of the death of Mr. Robert E. Lee, and that thereby the Employer, Florida Industrial Commission, had knowledge of the death and has not been prejudiced by failure to receive notice in writing of such death, pursuant to Section 440.18, Florida Statutes.
“2. It is presumed under the Statute that the injury of the employee was not occasioned by the willful intent of such employee to injure or kill himself, and I therefore find that the Employer/Carrier has failed to overcome this presumption and that ' the death of Robert E. Lee was not occasioned by his willful intent to kill himself. In arriving at this finding I have given consideration to the testimony of the investigating police officers and the testimony of the Orange County Medical Examiner who had investigated, and I feel that the opinion of the Orange County Medical Examiner was more in accordance with logic and reason than the conclusions of the investigating police officers. Although the death certificate may be considered prima facie proof of the facts therein stated, I find that from consideration of all of the facts presented before me at the hearing that such prima facie proof has been overcome: I do not believe that the conduct of the deceased on the morning of his death, as revealed by the evidence, was consistent with an intention to commit suicide.
“3. I further find that the decedent did not suffer his death by an accident arising out of or in the course of his employment with the Florida Industrial Commission.”
There can be no doubt that the Deputy’s findings numbered 1 and 2 were eminently correct. Notice to Hopkins was sufficient in face of the fact that the Commission did not show it had been prejudiced by failure to receive notice in writing of Mr. Lee’s death as provided by Section 440.18, Florida Statutes, F.S.A.
There could be but three hypotheses in connection with the tragic death of Robert E. Lee. He committed suicide, was murdered or was accidently killed. The statutory presumption that Lee did not die by his own hand was not overcome by the evidence in this case. The Deputy Commissioner definitely eliminated the suicide theory by finding that Mr. Lee’s death “was not occasioned by his willful intent to kill himself.” Respondents do not contend that Lee met his death by the act of another person nor is murder even suggested by any of the witnesses or by the circumstantial evidence herein. Thus constat — he was killed accidentally. From this point on the problem becomes relatively simple.
The Deputy’s finding that Mr. Lee did not meet his death by accident arising out of or in the course of his employment was sustained by the full Commission upon the premise that such finding is sustained by competent, substantial evidence which accords with logic and reason. On this issue there is no place in this record for the application of the competent, substantial evidence rule because there is no evidence which could be said to give rise to a reasonable inference that Lee was not attending to his assigned duties on the day the accident occurred or that he had deviated therefrom to any substantial degree.
The Deputy stated that he gave little effect to the “opinions” of Mr. Hopkins. Although he did not say so, a careful study of the testimony discloses that he gave no credence whatsoever to Mr. Hopkins’ sworn testimony. There is no evidence in this *271 record which can he said to warrant a reasonable assumption that Lee was not essentially in attendance upon his master’s business at the time he came by his death. On the contrary, there is ample evidence to justify the reasonable inference that Lee was attending to his duties as an employee of the Florida Industrial Commission at the time he sustained the fatal wound.
After finding that Lee’s death was accidental, it is difficult to understand how the Deputy could have concluded that said accident did not occur during the course of carrying out the duties imposed upon him by his employer. The only explanation which occurs to us after a careful analysis of the entire record is that the Deputy, although correct in his finding that Lee did not commit suicide, felt intuitively that such was not the case. Moreover, counsel for respondents, throughout their brief, leave little doubt that they hold to the firm assumption that Lee committed suicide. Nevertheless, the fact remains that the statutory presumption against the theory of suicide was not overcome and the Deputy’s ruling on this issue, that Lee’s death was the result of an accident, was properly affirmed by the full Commission.
The Deputy stated that he would be required to compound inferences in order to reach the conclusion that Lee met his death while he was in attendance upon his employer’s business. With this observation we cannot agree. Subsequent to his determination that Lee’s death was accidental, the Deputy could not have correctly determined that Lee was not attending to his master’s business. He was doing little else under any reasonable inference deducible from the evidence. If it could be said that he had departed from his assigned duties such deviation was at most inconsequential.
This is not a case wherein the Deputy was compelled to place an inference upon an inference. Initially it should be borne in mind that establishment of the fact that Mr. Lee was about his master’s business when his accidental death occurred does not depend entirely upon circumstantial evidence. The evidence on this issue consists primarily of direct and positive testimony. This Court has laid down a yardstick for the guidance of deputy commissioners in matters in which they are re-^ quired to make a finding or reach a conclusion by the use of inferences. This rule was pronounced in the case of Sanford v. A. P. Clark Motors Inc., Fla., 45 So.2d 185, and reaffirmed in American Airmotive Corp. v. Moore, Fla., 62 So.2d 37, 39. We quote from our opinion in Sanford:
“In proving that an accident took place in course of one’s employment a claimant is not bound by the preponderance of evidence rule or the rule of proof beyond and to the exclusion of a reasonable doubt as in criminal cases. He is required to prove or show a state of facts from which it may be reasonably inferred that the deceased was engaged in the Master’s business when the accident took place.” (Italics supplied.)
This guideline is a corollary of the rule applicable in workmen’s compensation cases to which we have consistently adhered; “Even in doubtful cases the doubt should be resolved in favor of the claimant.” [1]
When the Deputy found and determined that Lee did not commit suicide, it then became his duty to reach one conclusion garnered from the evidence as a whole[2] to wit: Whether Lee was or was not at the time of his accidental death about his master’s business. It would be *272 unreasonable to infer that Lee was not attending to his employer’s business simply because he might have been listening to the radio, looking at television, working on a cross-word puzzle, playing solitaire, cleaning, inspecting or otherwise handling the aforementioned pistol or merely twiddling his thumbs between telephone calls to and from persons from whom he sought needed information in connection with his assigned work in Sumter County, before going to that County to conclude his assignment. It was wholly unnecessary for the Deputy to determine exactly how Lee met his death. It matters not just what happened since it was properly determined that Lee’s death was not suicide but was the result of an accident.
There is ample evidence, in fact nothing to the contrary, from which it can be reasonably inferred that Lee was attending to his employer’s business and that his deviation, if any, therefrom was de mini-mus.
Unless Mr. Hopkins’ sworn testimony as well as that of Mrs. Lee is to -be completely ignored and the circumstantial evidence herein given no evidentiary value whatsoever, Mr. Lee met his death by accident arising out of and in the course of his employment.
We see no basis for disbelieving Mr. Hopkins’ testimony to the effect that Lee was under work assignment at the time of his death, was permitted, actually encouraged, to do his preliminary work at home by use of the telephone and also encouraged, with his expenses paid by his employer, to attend the Peace Officers Conventions and take part in their pistol range activities. It is true that counsel for respondents endeavored .on cross-examination' to destroy the effect of Hopkins’ testimony by suggesting that he and Lee were personal friends of long-standing. Hopkins, although admitting a close friendship with Lee after the latter became an employee of the Florida Industrial Commission, stated frankly and swore emphatically that while he would like the widow’s claim to be allowed, he would not swear falsely for such reason or any other.
We can find no indicia of false swearing on the part of Mr. Hopkins or Mrs. Lee and conclude that the Deputy erred in finding that Lee did not come to his death by accident arising out of and in the course of his employment.
The order of the full Commission, which affirmed the denial by the Deputy of the award sought by Mrs. Lee, is hereby quashed with directions that an appropriate award be made in response to her claim.
It is so ordered.
ROBERTS, C. J., and TERRELL and THORNAL, JTJT., concur.
O’CONNELL, T., dissents.

. Wick Roofing Co. v. Curtis, Fla., 110 So.2d 385; Sharer v. Hotel Corporation of America et al., Fla., 144 So.2d 813; Sanford v. A. P. Clark Motors, Inc., supra, and American Airmotive Corp. v. Moore, supra.

. Sanford v. A. P. Clark Motors, Inc., supra, and American Airmotive Corp. v. Moore, supra.