72 So.2d 53 (1954)
LYNG
v.
RAO et al.
Supreme Court of Florida. Special Division B.
April 23, 1954.
*54 Thacker & Thacker, Kissimmee, for appellant.
Sanders, McEwen & Berson, Orlando, for appellees.
DREW, Justice.
Petitioner, Elsie Lyng, claims Workmen's Compensation benefits for injuries which she says she received when struck by lightning during a thunderstorm while engaged in her employment as a stenographer for the Osceola Hospital in Kissimmee, Florida, on June 14, 1951. It is not denied that she was engaged in her employment at the time of the alleged injury. The controversy has reached us because the Deputy Commissioner found that there was no testimony whatever of traumatic injury, and the Full Commission and Circuit Court upheld such findings on the principle that they were supported by substantial competent evidence.
Petitioner, claimant, at the time of the alleged injury was seated at her typewriter. In the room where she was seated were two exposed metal pipes and there was an electrical outlet in the center of the floor. The ceiling had been leaking for some time and the rainfall accompanying the storm had come through the ceiling and settled over the floor. The claimant's feet were wet and resting on the wet floor. She was engaged in typing when, according to her testimony, the following events took place:
"Well, what actually happened I don't know, but I do know it was during a terrific thunder shower and I was sitting at the typewriter and all of a sudden there was a tremendous glare of lightning in the room and I couldn't turn loose the typewriter and how long I sat there I don't know because I was paralyzed or petrified, unable to move."
She further testified that she didn't hear anything but that "light did flood the room;" and she didn't know how long she sat there because she couldn't move. She said, "I don't even remember leaving the room and getting out in the lobby where I think that I was found."
Her story is not disputed in the record. On the contrary, it is supported by the evidence of Dr. Frederick W. LaCava, employed in the same hospital. He was in an adjoining room at the time. He testified that the lightning struck the building. He confirmed the fact that the floor was wet and the physical characteristics of the room. The following are portions of his testimony:
"A. Well, the best way I can describe it, sir, is that I was coming into the examining room from the main hall of the first floor of the hospital. I think I had taken a few steps into the examining room which is right next door to this office that we were talking about.
"Q. In other words, you were not in the office with Mrs. Lyng? A. No, I wasn't at that particular time. No, I was not in this room, no.
"Q. What happened now at that particular time, physical thing, what, if anything, did you observe? A. Well, I don't think there was an awful lot to observe as there was to hear, sir, I definitely heard a deep voice and it was followed almost simultaneously, I mean the lapse of time was almost practically nothing, by a terrific clap of thunder, I mean it just reverberated the air and windows rattled and the *55 lights went out, I remember that, and I also know that the noise was just tremendous the amount of sound.
"Q. Anything happen to that room where Mrs. Lyng was working? A. Well, within, I would say within  I walked immediately into that room and I would judge it took fifteen steps to get in there and when I was in there, the other part of the ceiling just opened up and we had just a deluge of water came down.
"Q. And before this it had leaked and now it was pouring in? A. This was right over, right over the door at the right side as you come in from the main waiting room and this rent is still there and it is a pretty good size tear in the plaster."
On cross examination Dr. LaCava said:
"A. I can only assume so by the course of events and the way they occurred. I did not see lightning strike the building I didn't see any external evidence of it outside, but I think its only fair to say that the sound of the forces of electricity were very discernible and immediately following the ceiling split and the water came down and I might say this: that I actually smelt ozone in the air."
He further testified that immediately after the event he requested the claimant to help mop the floor "and she said I feel so sick I can't stand up."
Claimant testified that she went home after the storm but couldn't sleep  that a pain developed in her chest  that she came back to the hospital the next morning and "that was when I was stricken." That she was immediately hospitalized and remained so until August 18, 1951, is undisputed. It was October 1st of that year, however, before she was able to return to work.
The only evidence in the record as to the nature of her injuries was that of the claimant. She testified that she had never had any pain in her chest in her life until the day in question. That there was "never anything the matter with my heart. I haven't ever had a broken bone, I have never had an operation or anything. I was in perfectly good health. When that light flooded the room * * *." She further testified that after leaving the hospital some two months later, "I had to come back and have shock and other treatment."
The carrier offered no evidence, resting its defense on the theory that "there has been no showing of a trauma, no traumatic injury whatever." The Deputy Commissioner agreed with this theory, stating in his order:
"In controverting the claimant's request for compensation, counsel for the employer and carrier relies solely on the proposition that the claimant did not suffer such injury by accident as would entitle her to compensation within the contemplation of the Workmen's Compensation Act. In support of this controversion, counsel for the employer and carrier cites only the case of City Ice & Fuel Division v. Smith, Fla., 56 So.2d 329, being a case decided on January 15, 1952. In the Smith case the claimant was involved in a traffic accident and suffered a jolt. He went to see a physician who found no evidence of physical injury, but gave him a sedative for his nerves. After working several days he was found to be in a daze and stupor and the physician was again called. After observation the claimant was examined by a psychiatrist, whose opinion was that claimant was suffering from conversion hysteria and possible dementia praecox, catatonic type. He found no evidence of injury by trauma. The Court held that the claimant was afflicted with nothing more than `a mental or nervous injury due to fright or excitement only' which is not an injury by accident arising in the course of employment, and not compensable.
"It must be noted in this instant case, that there is no testimony whatsoever, of traumatic injury, and in fact all of the evidence points to the proposition *56 that whatever happened on the questioned date of alleged injury caused this claimant only nervous or mental strain and no doubt, has caused her to be extremely uncomfortable. However, relying strongly on the Smith case, as cited above, I am of the opinion that the claimant did not sustain such an injury by accident as would entitle her to compensation within the contemplation of the Workmen's Compensation Act."
If the claimant was injured by lightning (it being conceded she was engaged in her employment at the time) she is entitled to compensation. Fort Pierce Growers Ass'n v. Storey, 158 Fla. 192, 29 So.2d 205.
Our study of the record in this case convinces us that the Deputy Commissioner fell into error because the effect of his construction of the word "trauma" limited it to an outwardly visible bodily injury; a wound visible to the eye such as a cut, abrasion or the sort. Trauma is defined in Black's Law Dictionary (4th ed., 1951) as, "In medical jurisprudence. A wound; any injury to the body caused by external violence." In Webster's Collegiate Dictionary, (5th ed., 1943) the word is defined as, "An injury, wound, shock or the resulting condition or neurosis." (Emphasis added.) We find no definition which limits the word to a visible injury. Many serious accidental injuries  especially those affecting internal organs  are not visible to the eye, and yet we know that such constitute a great part of compensable injuries. An injury to the brain is seldom observable  except by symptoms. Insanity, resulting from an injury received in the course of employment, is compensable. See Ford Motor Co. v. Industrial Commission, 355 Ill. 490, 189 N.E. 498; Greenberg v. Solomonick, 272 App.Div. 851, 70 N.Y.S.2d 388, affirmed 298 N.Y. 911, 85 N.E.2d 57.
We do not agree that City Ice & Fuel Division v. Smith, Fla. 1952, 56 So.2d 329, supports the findings and conclusions of the Deputy Commissioner. The facts there were so entirely different from those in this case that it cannot be said to be authority for respondent. One major difference in these cases is that in the Smith case there was a considerable lapse of time between the alleged injury to Smith in the traffic accident and the diagnosis that he was suffering from conversion hysteria and possible dementia praecox, catatonic type; whereas in the instant case a perfectly healthy and normal woman was almost instantaneously transformed to a condition sufficiently serious to necessitate hospitalization for over two months and to render her unable to work for nearly four months. Another difference is the nature of the force causing the alleged injury, a most important factor
We hold that the evidence before the Commissioner, undisputed and unanswered, established that an injury had occurred to the claimant on June 14, 1951, when the events related herein took place, and that the only logical explanation of the cause of the injury was that the claimant was struck by lightning. The combination of the many events occurring so suddenly and the injury of the claimant following so closely can lead to no other conclusion. Under such circumstances, the burden was on the carrier or employer to overcome this proof by showing that another cause of the injury was more logical and consonant with reason. The carrier and employer failed to carry this burden  in fact, neither made an affort to do so. Even if the cause was doubtful it would be our duty under the law and the basic philosophy of Workmen's Compensation Acts to resolve such doubt in favor of the claimant. See American Airmotive Corp. v. Moore, Fla. 1952, 62 So.2d 37.
The order appealed from is hereby reversed and the cause is hereby remanded for further proceedings consonant with these views.
THOMAS, Acting C.J., HOBSON, J., and HOLT, Associate Justice, concur.