LEWIS, J.
This case is before the Court on appeal from Williams v. American Optical Corporation, 985 So.2d 23 (Fla. 4th DCA 2008), in which the Fourth District Court of Appeal held that the Asbestos and Silica Compensation Fairness Act (the Act) is unconstitutional as applied to the Appellees. In its decision, the Fourth District also certified conflict with the decision of the Third District Court of Appeal in DaimlerChrysler Corporation v. Hurst, 949 So.2d 279 (Fla. 3d DCA 2007). See Williams, 985 So.2d at 32. This Court has jurisdiction pursuant to article V, sections 3(b)(1) and 3(b)(4) of the Florida Constitution.
BACKGROUND

Procedural Histonj

In the decision below, the Fourth District Court of Appeal “cobbled” together multiple asbestosis-litigation cases and summarized the relevant facts as follows:
*123 Litigation in Florida state courts involving asbestos contamination has been considerable and persistent for a number of years. Prompted by that, the Florida Legislature decided to enact the Florida Asbestos and Silica Compensation Fairness Act, which became effective in 2005.[n.1] The Act made significant changes to the cause of action for damages resulting from an exposure to asbestos. The issue we confront involves the nature of those changes.
Before the Act was adopted, all of the plaintiffs in these cases [collectively Ap-pellees] had filed actions for damages based on various degrees of asbestosis— that is, interstitial lung disease resulting from asbestos exposure and pleural thickening. According to plaintiffs, when they filed their lawsuits before the Act’s adoption it was not necessary to establish that any malignancy or physical impairment had already resulted from their contraction of the disease asbestosis. Instead, they claim, it was merely necessary for them to show that they had suffered an injury from an asbestos-related disease.
Under the Act, however, a claimant bringing an action for damages from exposure to asbestos must now, as an indispensable element, plead and prove an existing malignancy or actual physical impairment for which asbestos exposure was a substantial contributing factor. Plaintiffs’ asbestosis claims were dismissed for failing to meet the requirements of the Act. They challenge the Act on the grounds that by this legislation the government of Florida has taken from them a personal right in a cause of action for money damages arising from the exposure to asbestos even if the injury has not yet become malignant or caused any physical impairment.
Williams, 985 So.2d at 25-26 (footnote omitted). The Fourth District framed the dispositive issue presented as: “Can [the Act] be retroactively applied to prejudice or defeat causes of action already accrued and in litigation?” Id. at 25.
The Fourth District properly noted that citizens have personal rights under the Florida Constitution to acquire, defend, and keep property free from the claims of government and to vindicate those rights in courts of law. See id. at 26. The district court explained that a cause of action constitutes an intangible property right that is grounded in tort. See id,. Retroactive legislation that impacts property rights is constitutionally invalid where “vested rights are adversely affected or destroyed or when a new obligation or duty is created or imposed, or an additional disability is established, in connection with transactions or considerations previously had or expiated.” Id. at 27 (quoting McCord v. Smith, 43 So.2d 704, 709 (Fla.1949)).
The district court stated that when a cause of action accrues, it becomes a substantive vested right. See id. at 27. However, whether legislation may affect a vested right to a particular cause of action is dependent on “the stage the right has attained when the legislation is enacted.” Id. The Fourth District concluded that where a right of action has already accrued, new legislation enacted after that accrual which substantively affects the cause of action may not be retroactively applied to that cause of action. See id. at 28.
Based upon this conclusion, the Fourth District next considered whether prior to the Act, Florida law recognized a cause of *124 action for damages arising from asbestosis without any physical impairment or the presence of cancer. See id. at 28. The Fourth District concluded that case law from this Court and the Third District Court of Appeal clearly established that prior to the Act, emotional effects from contracting asbestosis were actionable under Florida law even though no physical impairment or cancer had resulted. See id. The district court recognized this Court’s prior precedent that in cases where an alleged injury is a “creeping-disease,” such as asbestosis, the action accrues when the accumulated effects of the substance manifest themselves in a way which supplies some evidence of a causal relationship to the product. See id. at 29 (quoting Celotex Corp. v. Copeland, 471 So.2d 538, 539 (Fla.1985)). The district court rejected the asbestos industry’s contention that the causes of action of those manifesting injury were a mere expectancy and not a vested cause of action. See id. at 30. Instead, the Fourth District explained that the Appellees had alleged a previous exposure to asbestos which resulted in the disease of asbestosis, and that the disease had manifested itself in some way. See id. at 30-31. As a result, the Fourth District concluded that for each of the Appellees, the cause of action had “passed from an expectation to the accrual of the right to sue for damages.” Id. at 31.
The Fourth District held that the Act could not be constitutionally applied to eliminate any existing vested property rights in the asbestos-related actions that were pending when the Act became effective. See id. at 32. The district court certified conflict with the decision of the Third District Court of Appeal in DaimlerChrysler Corporation v. Hurst, 949 So.2d 279 (Fla. 3d DCA 2007), “to the extent that it ... stand[s] for a holding that the Act may be validly applied to asbestosis claimants with accrued causes of action for damages but without permanent impairments or malignancy.” Williams, 985 So.2d at 32.
The decision of the Fourth District is now before this Court for review.

The Asbestos and Silica Compensation Fairness Act

The Act was created by chapter 2005-274, Laws of Florida. The preamble to the legislation provides multiple statements with regard to asbestos litigation, and section 774.202, Florida Statutes (2010), provides that the Act serves four purposes: (1) to give priority to “true” victims of asbestos (i.e., those claimants who can demonstrate “actual physical impairment” caused by asbestos exposure); (2) to preserve the rights of any individuals who have been exposed to asbestos to pursue compensation should they become “impaired” in the future; (3) to enhance the ability of the judicial system to supervise and control asbestos litigation; and (4) to conserve the resources of defendants to permit compensation to cancer victims and individuals who are currently “physically impaired,” while securing the right to similar compensation to individuals who may suffer “physical impairment” in the future. See § 774.202, Fla. Stat. (2010).
Section 774.204(1), Florida Statutes (2010), provides that “[pjhysical impairment of the exposed person, to which asbestos ... exposure was a substantial contributing factor” is an essential element of an asbestos claim. Subsection (2) provides that “[a] person may not file or maintain a civil action alleging a nonmalignant asbestos claim in the absence of a prima facie showing of physical impairment as a result of a medical condition to which exposure to asbestos was a substantial contributing factor.” The subsection details the highly technical elements of a prima facie claim *125 for impairment. For example, one element is:
A determination by a qualified physician that asbestosis or diffuse pleural thickening, rather than chronic obstructive pulmonary disease, is a substantial contributing factor to the exposed person’s physical impairment, based at a minimum on a determination that the exposed person has:
1. Total lung capacity, by plethys-mography or timed gas dilution, below the predicted lower limit of normal;
2. Forced vital capacity below the lower limit of normal and a ratio of FEV1 to FVC that is equal to or greater than the predicted lower limit of normal; or
3. A chest X ray showing small, irregular opacities (s, t, u) graded by a certified B-reader as at least 2/1 on the ILO scale.
§ 774204(2)®, Fla. Stat. (2010).
Section 774.205(2), Florida Statutes (2010), provides that a plaintiff in a civil action alleging an asbestos claim must “include with the complaint or other initial pleading a written report and supporting test results constituting prima facie evidence of the exposed person’s asbestos-related ... physical impairment.” The Act states that “[a] diagnosis that states that the medical findings and impairment are ‘consistent with’ or ‘compatible with’ exposure to asbestos does not meet the requirements of this subsection.” § 774.204(2)(h), Fla. Stat. (2010). Section 774.205(2) also provides that for any plaintiff who had a claim pending on the effective date of the Act (which includes all of the Appellees), the report and test results must be filed at least thirty days before a trial date may be set.
Section 774.206(1), Florida Statutes (2010), provides that the statute of limitations does not begin to run on an asbestos claim arising out of a nonmalignant condition “until the exposed person discovers, or through the exercise of reasonable diligence should have discovered, that he or she is physically impaired by an asbestos-related ... condition.”
Finally, the portion of the session law that provides the effective date of the Act states:
This act shall take effect July 1, 2005. Because the act expressly preserves the right of all injured persons to recover full compensatory damages for their loss, it does not impair vested rights. In addition, because it enhances the ability of the most seriously ill to receive a prompt recovery, it is remedial in nature. Therefore, the act shall apply to any civil action asserting an asbestos claim in which trial has not commenced as of the effective date of this act.
Ch.2005-274, § 10, at 2579, Laws of Fla. As previously noted, “[bjefore the Act was adopted, all of the plaintiffs in these cases had filed actions for damages based on various degrees of asbestosis....” Williams, 985 So.2d at 26. The parties do not dispute that, as of the effective date of the Act, trial had not commenced in any of the Appellees’ cases.
ANALYSIS
A district court decision declaring a statute unconstitutional is subject to de novo review by this Court. See Fla. Dep’t of Children & Families v. F.L., 880 So.2d 602, 607 (Fla.2004). Article I, section 2 of the Florida Constitution guarantees to all persons the right to acquire, possess, and protect property. Section 9 of the same article provides that “[n]o person shall be deprived of life, liberty or property without due process of law.” Art. I, § 9, Fla. Const. The United States Supreme Court has clearly held that a cause of action is “a *126 species of property protected by the Fourteenth Amendment’s Due Process Clause.” Logan v. Zimmerman Brush Co., 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Similarly, this Court has explained that “[o]nce the defense of the statute of limitations has accrued, it is protected as a property interest just as the plaintiffs right to commence an action is a valid and protected, property interest.” Wiley v. Roof, 641 So.2d 66, 68 (Fla.1994) (emphasis supplied) (citing Starnes v. Cayouette, 244 Va. 202, 419 S.E.2d 669 (1992)); see also R.A.M. of South Fla., Inc. v. WCI Communities, Inc., 869 So.2d 1210, 1220 (Fla. 2d DCA 2004) (“[O]nce a cause of action has accrued, the right to pursue that cause of action is generally considered a vested right.”), review denied, 895 So.2d 406 (Fla.2005).

Vested Rights

The parties strenuously debate whether the Appellees have a vested property interest in their right to pursue an action based on asbestos-related injuries. Having reviewed the parties’ arguments and Florida common law, we conclude that the Appellees do indeed possess such a vested right. According to the United States District Court for the Southern District of Florida:
It is axiomatic that a cause of action for negligence, or products liability, or breach of warranty does not accrue until the complaining party sustains some type of damage. A cause of action sounding in tort arises in the jurisdiction where the last act necessary to establish liability occurred. Colhoun v. Greyhound Lines, Inc., 265 So.2d 18 (Fla.1972). In Florida, the “last act” is discovery of the damage.
Wildenberg v. Eagle-Picher Industries, 645 F.Supp. 29, 80 (S.D.Fla.1986); see also F.D.I.C. v. Stahl, 89 F.3d 1510, 1522 (11th Cir.1996) (“Florida courts have found that the limitations period does not begin to run until a plaintiff knew or should have known of the injury.”).
Prior to the Act, claimants with an asbestos-related disease unquestionably had a right under the common law to seek redress against the persons or entities that allegedly caused injury to them. See, e.g., Owens-Corning Fiberglass Corp. v. Corcoran, 679 So.2d 291, 291-92 (Fla. 3d DCA 1996) (affirming judgment in favor of plaintiff for “injury because of his exposure to asbestos”); W.R. Grace & Company-Conn. v. Pyke, 661 So.2d 1301, 1304 (Fla. 3d DCA 1995) (affirming judgment in favor of plaintiff in asbestos personal injury action, but reversing award for loss of future earning capacity); Eagle-Picher Industries, Inc. v. Cox, 481 So.2d 517, 519, 530 (Fla. 3d DCA 1985) (affirming “substantial” money judgment against manufacturer of asbestos products); Brown v. Armstrong World Industries, Inc., 441 So.2d 1098, 1099 (Fla. 3d DCA 1983) (reversing summary judgment because whether plaintiff should have known that he had a cause of action against manufacturer for asbestos-related injuries was a genuine issue of material fact).
With regard to asbestos-related diseases, we have held that an action accrues when the accumulated effects of the substance manifest in a way which supplies some evidence of the causal relationship to the manufactured product. See Celotex Corp. v. Copeland, 471 So.2d 533, 539 (Fla.1985). The parties diverge in their interpretation as to what constitutes a “manifestation” of the disease. The Appellants contend that ultimate physical impairment symptoms as set forth in the statutory restrictions, such as reduced lung capacity and difficulty breathing, must be present before a disease is considered manifested. Conversely, the Appellees contend that ac *127 tual changes in the lung constitute injury and manifestation for accrual purposes.
Prior to the Act, the common law did not require any particular symptoms to constitute “manifestation” in connection with asbestos injuries. Case law clearly demonstrates that particular physical symptoms were not required, and changes in the lung evidencing asbestos-related disease were sufficient to trigger a cause of action. In Celotex Corp. v. Meehan, 523 So.2d 141 (Fla.1988), this Court explained:
Under Florida’s discovery standard, the cause of action does not accrue, for limitations purposes, until the injured party discovers or has a “duty to discover the act constituting an invasion of his legal rights.” Creviston v. General Motors Corp., 225 So.2d 331, 334 (Fla.1969). Consequently, a medical diagnosis which revealed that the party was suffering from asbestos-related diseases would be the event that triggered, Florida’s statute of limitations unless it was shown that the party should have been aware of a cause of action before that time. In Florida, the statute does not begin to run until such a discovery occurs.
Id. at 145 (emphasis supplied). Thus, pri- or to the Act, a diagnosis of asbestos-related disease triggered the accrual of a cause of action. Contrary to the assertion of the asbestos industry and the dissent, the development of particular impairment symptoms as described in the Act has never been the legal factor in determining “manifestation” or accrual under Florida law. Accordingly, the claim of the asbestos industry that the Act is merely a codification of the common law and physical impairment symptoms have always been required for an asbestos-related disease to have “manifested” — a position that the dissent adopts — is patently incorrect.
Moreover, the assertion that a minimum level of injury or damage is required to “open the courthouse doors” for a plaintiff to seek redress against a tortfeasor for negligence is in direct contravention of the common law. As recently as 2007, this Court explained the common law elements of a negligence cause of action:
The claimant must first demonstrate that the defendant owed a “duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks.” Clay Elec. Coop., Inc. v. Johnson, 873 So.2d 1182, 1185 (Fla.2003) (quoting Prosser and Keeton on the Law of Torts § 30, at 164 (W. Page Keeton et al. eds., 5th ed. 1984)). Second, the claimant must establish that the defendant failed to conform to that duty. Id. Third, there must be “[a] reasonably close causal connection between the [nonconforming] conduct and the resulting injury” to the claimant. Id. Fourth, the claimant must demonstrate some actual harm. Id.
Williams v. Davis, 974 So.2d 1052, 1056 (Fla.2007) (alterations in original) (emphasis supplied). The phrase “some actual harm” does not require a precise technical level or particular threshold of injury or impairment symptom that a plaintiff must satisfy to file an action. Id.; see also Kneeland v. Tampa Northern R. Co., 94 Fla. 702, 116 So. 48, 48 (1927) (“In actions where negligence is the basis of recovery, it is not necessary for the declaration to set out the facts constituting the negligence, but an allegation of sufficient acts causing the injury, coupled with an averment that they were negligently done, will be sufficient.” (emphasis supplied)).
Further, the contention of the Appellants, also advanced by the dissent, that a plaintiff must exhibit particular physical *128 impairment symptoms of illness or injury for a cause of action to have vested is belied by our early case law. In Lyng v. Rao, 72 So.2d 53, 54 (Fla.1954), lightning struck a building in which the plaintiff worked. Although she could not recall if she was struck by the lightning, after the incident she experienced pain in her chest and “was stricken” to the extent that she was hospitalized. Id. at 55. Initially, her request for Workmen’s Compensation benefits was denied because the only evidence of traumatic injury was based on the plaintiffs own statements. See id. at 55-56. This Court reversed the denial of benefits and stated;
[T]he Deputy Commissioner fell into error because the effect of his construction of the word “trauma” limited it to an outwardly visible bodily injury; a wound visible to the eye such as a cut, abrasion or the sort. Trauma is defined in Black’s Law Dictionary (4th ed. 1951) as, “In medical jurisprudence. A wound; any injury to the body caused by external violence.” In Webster’s Collegiate Dictionary, (5th ed. 1943) the word is defined as, “An injury, wound, shock or the resulting condition or neurosis.” (Emphasis added.) We find no definition which limits the word to a visible injury. Many serious accidental injuries — especially those affecting internal organs — are not visible to the eye, and yet we know that such constitute a great part of compensable injuries.
Id. at 56 (emphasis supplied). The Court later relied upon Lyng in Clark v. Choctawhatchee Electric Cooperative, 107 So.2d 609, 611-12 (Fla.1958), when it held that a plaintiff who suffered an electric shock could recover for both bodily injury and emotional trauma even though the plaintiff exhibited no signs of burns. In reaching its determination, this Court opined that “too much emphasis has been placed on the absence from the appellant’s body of trauma such as burns, bruises or scars.” Id. at 612.
Moreover, Florida common law does not and has never required an impairment or a particular manifestation of injury according to some arbitrarily adopted level before a cause of action accrues. In Hagan v. Coca-Cola Bottling Company, 804 So.2d 1234, 1241 (Fla.2001), this Court held that an action for emotional distress could be maintained by plaintiffs who drank from a bottle that appeared to contain a used condom even though there was no accompanying discernable, particular physical injury or some level of impairment. Similarly, in Way v. Tampa Coca Cola Bottling Co., 260 So.2d 288, 289 (Fla. 2d DCA 1972), a man drank from a soda bottle and, after finding what appeared to be a rat inside, felt nauseous and vomited. The Second District Court of Appeal held that the man could maintain an action against the manufacturer even though he suffered no lingering physical injury or particular continuing impairment, but only a mental reaction, to the foreign object in the bottle. Id. at 290.
The dissent evinces a principle totally foreign to Florida common law when it asserts that there has never been a right of recovery in Florida for an asbestos-related injury unless a certain level of physical impairment has been demonstrated. First, this Court in Meehan specifically held that a cause of action accrued upon the diagnosis of an asbestos-related disease. There was absolutely no mention of any requirement that plaintiffs meet and surpass a baseline level of impairment. See Meehan, 523 So.2d at 145. Further, it is not necessary for this Court to have previously addressed the specific concept of how asbestos invades and damages the body. Legal precedent and the common law principles clearly demonstrate and cover that an individual who sustains an *129 injury due to the wrongful conduct of another — regardless of the particular level of physical symptoms or impairment — may maintain a cause of action against the person or entity that allegedly inflicted the injury if injury has occurred. See Clark, 107 So.2d at 611-12; Hagan, 804 So.2d at 1241. If there is no injury, there is simply no action; however, if there is proof of injury, there is no requirement of any particular level of impairment.
Here, a foreign substance — asbestos fibers — were inhaled and became embedded in the lungs of the plaintiffs without their knowledge or consent. This, like the electric shock suffered by the plaintiff in Clark, constitutes an actual injury that has been inflicted upon the bodies of the plaintiffs. To contend, as the dissent does here, that a certain level of impairment is absolutely necessary for a cause of action to accrue is incorrect and contrary to longstanding Florida common law. Instead of stating that our decision today adopts an unsupported, “expansive concept” of harm, see dissenting op. at 134, the dissent should simply state the truth — that it disagrees with our prior precedent and believes the rights of Floridians to recover for negligently inflicted injuries should be significantly restricted based not upon injury but upon a schedule of impairments adopted by the legislative branch.
When taken to its logical extreme, how broadly would the dissent interpret this elevated requirement to preclude the ordinary citizen from maintaining an action for an injury that has been suffered? If a person swallows a hypodermic needle that was concealed in a soda can, would that person be precluded from filing an action until he or she exhibits visible symptoms of major internal injuries, such as vomiting blood, or a debilitating virus? If a person is exposed to noxious fumes or toxic chemicals and develops a potentially fatal, but slowly progressing disease, and that person knows he or she is suffering from a degenerative disease and is slowly dying, must that person wait until a certain type of symptom or a specific level of impairment is demonstrated before seeking legal redress against the person or entity who allegedly caused this injury?
The dissent mistakes and confuses the well-established concept of injury under Florida common law for a more strenuous concept of a legislative schedule of impairment. Contrary to the assertion of the dissent, the common law of Florida has never required individuals who have suffered an injury to meet an arbitrarily drawn threshold of physical impairment for a cause of action to accrue. Were the opposite the case, and if the common law did operate on the basis of impairment rather than injury, cruel and arbitrary distinctions could be drawn to preclude severely injured citizens from maintaining actions against those who are responsible.
Although both the Appellants and the dissent contend that the Appellees’ injuries are negligible or minor and that they should be required to meet an elevated threshold (defined as “permanent impairment” under the Act) to pursue a claim, this has never been required under the common law. Instead, if a defendant challenges the severity or even the existence of damages, the common law prescribes that it is a matter for the jury to decide whether there has in fact been an injury and damage. For example, in McIntyre v. McCloud, 334 So.2d 171 (Fla. 3d DCA 1976), the Third District Court of Appeal stated:
In this personal injury action, the jury found from the evidence that the plaintiff-appellant did not sustain the injuries alleged,-which determination is unquestionably within the jury’s province. Even assuming arguendo, that a *130 “wrong” (in the form of negligence) was perpetrated by the defendants on the plaintiff, it is, nonetheless, well-established in the common law that there is no valid cause of action where there is shown to exist, at the very most, a “wrong” without “damage.”
Id. at 171-72 (emphasis supplied); see also Braddock v. Seaboard Air Line R.R. Co., 80 So.2d 662, 667 (Fla.1955) (quoting relevant jury instruction on pain and damages as providing, in relevant part, “It would be your duty to determine from the evidence what sort of injuries the plaintiff received, if any, their character as producing or not producing pain, the mildness or the intensity of the pain, its possible duration, and allow such sum as would fairly compensate her for her pain and suffering, if any ...” (emphasis supplied) (quoting Toll v. Waters, 138 Fla. 349, 189 So. 393, 395 (1939))); Leister v. Jablonski, 629 So.2d 981, 981 n. 1 (Fla. 5th DCA 1993) (“While common experience tells us that there was some initial pain involved in this BB gun shooting, whether it was sufficient to justify compensable damages seems properly to be a jury question.” (emphasis supplied)).
In the present case, it is clear that the main purpose of the Act is to alter the common law elements for an action arising from asbestos-related disease. The preamble to the Act notes that “the vast majority of asbestos claims are filed by individuals who allege that they have been exposed to asbestos and who may have some physical sign of exposure but who suffer no present asbestos-related impairment.” Ch.2005-274, preamble, at 2564, Laws of Fla. Further, one of the stated purposes of the Act is to give priority to the “true” victims of asbestos. See § 774.202(1), Fla. Stat. (2010). These statements demonstrate that the Act is intended to reverse years of common law precedent—precedent that the dissent fails to consider and address — holding that a diagnosis of asbestos-related disease and injury, without regard to any particular threshold level of impairment suffered, constitutes an accrued cause of action that provides citizens vested rights to file actions based on the injuries.
Here, medical and X-ray reports which are included in the appendix of the Appellants’ initial brief confirm that each of the Appellees suffers from actual lung injuries that are consistent with asbestos-related disease. Based upon well-established common law precedent, we hold that the Ap-pellees here had an accrued cause of action for the injuries they allegedly sustained due to asbestos exposure, and these causes of action constituted a property interest in which the Appellees had a vested right under article I, section 2 of the Florida Constitution. See Wiley, 641 So.2d at 68; Meehan, 523 So.2d at 145.

Retroactivity

Having determined that the Ap-pellees have vested causes of action, we must next consider whether the Act may be applied retroactively to those causes of action. A two-part test is utilized to determine whether a statute may be applied retroactively:
First, the Court must ascertain whether the Legislature intended for the statute to apply retroactively. Second, if such an intent is clearly expressed, the Court must determine whether retroactive application would violate any constitutional principles. See Metro. Dade County v.Chase Fed. Hous. Corp., 737 So.2d 494, 499 (Fla.1999).
Menendez v. Progressive Exp. Ins. Co., Inc., 35 So.3d 873, 877 (Fla.2010); see also Chase Fed. Hous. Corp., 737 So.2d at 499 (“[T]he retroactive operation of statutes can be harsh and implicate due process concerns.”). The Act specifically provides that it is to apply to “any civil action *131 asserting an asbestos claim in which trial has not commenced as of the effective date of this act.” Ch.2005-274, § 10, at 2579, Laws of Fla. Thus, express language in the chapter law creating the Act demonstrates that the Legislature intended that the Act apply retroactively. Accordingly, the main issue we must determine is whether retroactive application of the Act violates the Florida Constitution. As previously discussed this Court will not apply a statute retroactively if it “impairs vested rights, creates new obligations, or imposes new penalties.” State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 61 (Fla.1995); see also McCord v. Smith, 48 So.2d 704, 708-09 (Fla.1949) (noting that a retroactive provision of legislation is invalid where it adversely affects or destroys vested rights).
The session law creating the Act announces that its provisions are remedial in nature, and do not impact vested rights. See Ch.2005-274, § 10, at 2579, Laws of Fla. However, we have previously explained that “[j]ust because the Legislature labels something as being remedial ... does not make it so.” Laforet, 658 So.2d at 61. Here, the Act provides that particular physical impairment symptoms are now an essential new element of an asbestos cause of action, a requirement that never existed before. See § 774.204(1), Fla. Stat. (2010). Further, to establish impairment, the statute would require a claimant to demonstrate “a medical condition to which asbestos was a substantial contributing factor.” Id. § 774.204(2) (emphasis supplied).
Application of the Act to the Appellees does not merely impair their vested rights — it destroys them. There is no alternative remedy. The vested rights simply vanish. Prior to the July 1, 2005, effective date of the Act, potential asbestos claimants fell into one of two categories:
[[Image here]]
Pursuant to this Court’s decision in Mee-han, those individuals who had been diagnosed with asbestos-related disease (Group B) had accrued causes of action for damages that they allegedly suffered due to asbestos exposure. See Meehan, 523 So.2d at 145. On the other hand, claimants under Group A did not have an accrued cause of action.
Subsequent to the Act, the prior members of Group B are now split into two separate categories:
[[Image here]]
The Appellees concede that they fall under Group B-1 and cannot satisfy the restrictive standards for symptoms of impairment required by the Act to maintain an action for an asbestos-related disease. While claimants in Group B-l previously had an accrued cause of action, which is a form of constitutionally protected property, see Wiley, 641 So.2d at 68; Logan, 455 U.S. at 428, 102 S.Ct. 1148, subsequent to the Act, their causes of action simply no longer exist.
Additionally, many of the claimants who fall under Group B-l do manifest symp *132 toms of their asbestos-related disease and are “impaired” as that term is commonly understood. However, because these claimants cannot demonstrate the specific physical impairment symptoms that are mandated by the Act, their vested causes of action would be extinguished, and no redress would exist for their injuries. It is truly ironic that many of the injured persons in the cases relied upon by the dissent in support of its incorrect assertion that a certain level of physical impairment has always been required under the common law for a cause of action to accrue might not be able to satisfy the rigorous requirements of the new Act if they attempted to file their claims today. For example, in Brown v. Armstrong World Industries, Inc., 441 So.2d 1098, 1099 (Fla. 3d DCA 1988), the plaintiff complained of shortness of breath and was diagnosed with an asbestos-related disease. In Meehan, one of the plaintiffs experienced “bronchial problems,” which resulted from asbestosis. 523 So.2d at 147. The dissent fails to consider or accommodate the reality that probably neither of these injured persons could demonstrate the highly technical and elevated level of “physical impairment” that is required under the new Act. See § 774.204, Fla. Stat. (2010). If not, these previously existing rights to file actions for recovery based upon an asbestos-related disease and injury would have been extinguished. In this manner, the Act indubitably operates to destroy vested rights for all claimants who are members of Group B-l. Thus, even though the preamble to the Act contends that it does not impair vested rights, the contrary is actually true as a matter of law.[1]
This Court has invalidated retroactive applications of statutes that have attempted to substantively alter the existing law. As recently as February 2010, this Court held that a statutory amendment that required the filing of a notice of intent to litigate as a condition precedent to the initiation of an action for overdue insurance benefits constituted a substantive change in the law which could not be retroactively applied to insureds who had received an insurance contract before the effective date of the statute. See Menendez, 35 So.3d at 879-80. We explained the statute as it existed before and after the amendment as follows:
Before the addition of the statutory presuit notice provision, section 627.736 did not require an insured to provide notice to an insurer before filing an action for overdue benefits. PIP benefits became overdue if the insurer failed to pay within thirty days after receiving notice from the insured of the fact of a covered loss and the amount of such loss. § 627.736(4)(b), Fla. Stat. (2000). Any overdue payment was subject to a ten percent simple interest rate per year. § 627.736(4)(c), Fla. Stat. (2000). However, if the insurer had reasonable proof to establish that it was not responsible for the payment, the payment was not overdue. § 627.736(4)(b), Fla. Stat. (2000).
In contrast, the statute as amended in 2001 requires an insured to provide a *133 presuit notice of intent to initiate litigation and provides an insurer additional time to pay an overdue claim. § 627.736(ll)(a), (d), Fla. Stat. (2001). Second, the amendment mandates that the payment from the insurer must include interest and penalties not exceeding $250. § 627.736(1l)(d), Fla. Stat. (2001). Third, if the insurer pays within the additional time provided by the statute, the payment precludes the insured from bringing suit for late payment or nonpayment and shields the insurer from a claim for attorneys’ fees. Id. Finally, the amendment tolls the statute of limitations. § 627.736(ll)(e), Fla. Stat. (2001).
Id. at 878. We concluded that the amended statute was substantive in nature because it (1) potentially relieved an insurer of an obligation to pay attorneys’ fees; (2) created a “safe harbor” that allowed an additional period of time for an insurer to pay a claim; and (3) postponed the ability of an insured to bring suit for overdue benefits. See id. at 879. Based upon this conclusion, this Court held that retroactive application of the statute was impermissible. See id. at 880.
Moreover, this Court has held that statutes that operate to abolish or abrogate a preexisting right, defense, or cause of action cannot be applied retroactively. See, e.g., Wiley, 641 So.2d at 68-69 (statutory amendment which allowed victim to commence an action for damages which was previously barred by statute of limitations violated due process clause of Florida Constitution; “[o]nce an action is barred, a property right to be free from a claim has accrued”); Agency for Health Care Admin. v. Assoc. Industries of Fla., Inc., 678 So.2d 1239, 1254 (Fla.1996) (portion of legislative act that abolished statute of repose for claims that were already barred was unconstitutional in violation of due process (citing Wiley, 641 So.2d at 68)); Rupp v. Bryant, 417 So.2d 658, 665-66 (Fla.1982) (statutory amendment that would abolish plaintiffs right to recover against state officers, employees, and agents for negligent acts could not be retroactively applied).
Retroactive application of the Act here would operate to completely abolish the Appellees’ vested rights in accrued causes' of action for asbestos-related injury. For this reason, we conclude that the Act cannot be constitutionally applied to them.[2] In reaching this conclusion, we note that allowing the Appellees to proceed with their causes of action will not automatically result in millions of dollars in judgments against the Appellants. The Appellees must demonstrate that the Appellants caused whatever injuries the Ap-pellees are alleged to have suffered, the extent of the injury must be determined, and a jury must determine the amount of damages, if any, as compensation for loss.
CONCLUSION
Based on the foregoing, we affirm the holding of the Fourth District in Williams v. American Optical Corp., 985 So.2d 23 (Fla. 4th DCA 2008), that retroactive application of the Act to the Appellees, and other claimants who had accrued causes of action for asbestos-related disease pending on the effective date of the Act, is impermissible because it violates the due process clause of the Florida Constitution. We disapprove the decision of the Third District in DaimlerChrysler Corporation v. *134 Hurst, 949 So.2d 279 (Fla. 3d DCA 2007), to the extent it is inconsistent with this opinion.
It is so ordered.
PARIENTE, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, C.J., dissents with an opinion, in which POLSTON, J., concurs.

N.1.] See Ch.2005-274, § 10, Laws of Fla. The Act is codified at Chapter 774, Part II, Florida Statutes (2007).

. Moreover, the Act substantively impacts even those claimants whose causes of action accrued prior to the Act that can satisfy the heightened impairment requirement (i.e., claimants who fall under group B-2). Prior to the Act, these injured persons were not burdened with establishing a minimum level of particular impairment. Now, they too must meet the new standard of impairment articulated in the Act to avoid dismissal of their cases. We have held that "a statute that achieves a ‘remedial purpose by creating substantive new rights or imposing new legal burdens ' is treated as a substantive change in the law.” Smiley v. State, 966 So.2d 330, 334 (Fla.2007) (emphasis supplied) (quoting Arrow Air, Inc. v. Walsh, 645 So.2d 422, 424 (Fla.1994)).

. Although not argued by the parties, we agree with the analysis of the Fourth District Court of Appeal that the unconstitutional portions of the Act cannot be severed from the remainder, and the Act as a whole must fail as applied to the Appellees. See Williams, 985 So.2d at 32.