*1042 POLSTON, J.,
dissenting.
The majority creates a totally different legal definition of “manifestation” to then rulé that plaintiffs whose cause of action had not yet accrued at the time of Engle[3] class certification are part of the class. This newly created “manifestation” cannot be found in Engle and is contraiy to Florida law governing creeping disease cases such as this one. As a result, we have two different meanings of the exact same word: (i) the meaning ascribed by the majority for the purpose of determining whether a plaintiff is a member of the Engle class; and (ii) the meaning commonly used, to determine when the plaintiffs cause of action accrued. See majority op. at 1039 (“differentiating] between the accrual of a cause of action ... and pinpointing a date for class membership”) (quoting R.J. Reynolds Tobacco Co. v. Ciccone, 128 So.3d 604, 613 (Fla. 4th DCA 2013)). By very twisted, legal reasoning, the majority uses both of these. different meanings of “manifestation” to determine the certified class of Engle. I can find no justification in Engle, or elsewhere, for this. The majority’s decision has the effect of creating the same open-ended class that this Court specifically ' sought to avoid in Engle. Therefore, I respectfully dissent.
In Engle, this Court established November 21, 1996, as the cut-off date for membership in the Engle class and gave class members — namely “[a]ll [Florida] citizens and residents, and their survivors, who have ■ suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine” — one year from Engle’s mandate to file individual lawsuits in which they would be entitled to rely on certain findings by the class action jury. Engle, 945 So.2d at 1256. As this Court explained in Engle, the “critical event” for determining whether an individual plaintiff is a class member is “not when an illness was actually diagnosed by a physician, but when thé disease or condition first manifested itself.” Id. at 1276 (second emphasis added).
After Engle, two dates are relevant in determining whether' an individtial plaintiff who filed suit within a year of this Court’s mandate may benefit from the class action jury’s findings — May 5, 1990, and November 21,1996. The first date, which is four years before the Engle class action was filed, represents the 'earliest date that a plaintiffs tobacco-related disease or condition could have manifested itself without the .plaintiffs claims being barred by the applicable four-year statute of limitations. See Frazier v. Philip Morris USA Inc., 89 So.3d 937, 939 (Fla. 3d DCA 2012). The second. date, which is the class membership cut-off date, represents the latest date by which a plaintiffs tobacco-related disease or condition could have manifested itself for the plaintiff to be considered a member of the Engle class. See Engle, 945 So.2d at 1275. In other words, to be in the Engle class and therefore get the benefit of the Engle class action jury’s findings, a plaintiffs tobacco-related disease or condition must have manifested itself between the statute-of-limitations bar date qf May 5, 1990, and the judicially-imposed bar date of November 21, 1996.
Though this Court did not define “manifestation” in Engle, it chose to use this term, which has a well-established meaning in products liability cases involving creeping diseases (like those at issue in Engle) that is inextricably linked to the plaintiffs knowledge. Specifically, manifestation of d creeping disease is what triggers the accrual of a cause of action, and it occurs’ “when the plaintiff is on notice of a causal connection between exposure to the allegedly defective product *1043 and the resultant injury.” Barnes v. Clark Sand Co., 721 So.2d 329, 332 (Fla. 1st DCA 1998), approved sub nom. Pulmosan Safety Equip. Corp. v. Barnes, 752 So.2d 556 (Fla.2000); see also Am. Optical Corp. v. Spiewak, 73 So.3d 120, 124 (Fla.2011) (“[I]n cases where" an alleged injury is a ‘creeping-disease,’ ... the action accrues when the accumulated effects of the substance manifest themselves in a way which supplies some evidence of a causal relationship to the -product.”); Carter v. Brown & Williamson Tobacco Corp., 778 So.2d 932, 934 (Fla.2000) (same).
' In this cáse, resolution of the certified conflict turns on whether the samé knowledge-based definition - of “manifestation” that has'long applied in creeping disease cases to trigger the accrual of the plaintiffs cause of action applies in determining whether the plaintiffs tobacco-related disease or condition manifested itself in time for the plaintiff to be a member of the Engle class. Specifically, the First District has held that “manifestation” of a tobacco-related disease or condition occurs, and the cause of action therefore accrues, when the plaintiff is “aware of sufficient facts to permit the filing of a non-frivolous tort lawsuit against the tobacco company.” Castleman v. R.J. Reynolds Tobacco Co., 97 So.3d 875, 877 (Fla. 1st DCA 2012) (applying this definition from the statute of limitations case Frazier, 89 So.3d 937, to decide whether the plaintiff was- a member of the Engle class).
In contrast, in the decision on review, thé Fourth District rejected the First District’s conclusion that the pldintiff s knowledge, and therefore the accrual of the cause of action, is relevant tó the mahifes-tation inquiry where the class cut-off date rather than the statute-of-limitations' bar date is at issue. In so doing, the Fourth District held that the manifestation determination “is not an inquiry into the abstraction of what a plaintiff knew or should have known over ten years earlier,” it is “viewed with the'benefit of hindsight from the vantage-point of 2006 [after this Court decided Engle], where expert testimony may-establish the link between a plaintiffs concrete symptoms and tobacco.” Ciccone, 123 So.3d at 613-14.
• Rather than concluding -manifestátion means now what -it has always meant- as the First District did in Castleman, the majority accepts that the Fourth District in CiGcone properly “différen[tiated] between the accrual of a cause of action [and] pinpointing a date for class membership.” Majority op. at 1039 (quoting Ciccone, 123 So.3d at 613). In so holding, the majority ascribes a totally new meaning to the tertn “manifestation” -in order to squeeze additional plaintiffs whose causes of action had not yet -accrued as of the class cut-off date into thé Engle class. In defense of its new definition', the majority states that “policy concerns” which support making the plaintiffs knowledge critical to the manifestation’ inquiry in the statute of limitations context do not exist where class membership is concerned: “Unlike the statute of limitations context, [which] requires a reasonable plaintiff to know of the existence of the cause of action, there is no corresponding policy concern underlying the establishment of membership in the Engle class.” Majority op. at 1038.
Its policy views aside, the majority is simply wrong on the law because, in the creeping disease context, if a plaintiff does not know (or should not reasonably know) of the link between the product and the injury, the cause of action simply does not exist. See Carter, 778 So.2d at 934. Under basic tort law, it is axiomatic that a plaintiff cannot sue for a cause of action that does not exist and that a cause of action does not exist until it accrues. See Hodge v. Serv. Mach. Co., 438 F.2d 347, 349 (6th Cir.1971) (“A cause of action accrues when a suit may be maintained upon *1044 it. Black’s Law Dictionary 37 (4th ed.1951), A suit may not he brought upon a cause of action until it exists, and a cause of action does not exist until all its elements coalesce.”); see also Spiewak, 73 So.3d at 129 (“If there is no injury, there is simply no action[.]”).
The same basic principle that a cause of action must exist to be sued upon also applies in the class action context. Cf. Castano v. Am. Tobacco Co., 84 F.3d 734, 737, 740-41 (5th Cir.1996) (dismissing class action brought on behalf of “[a]ll nicotine-dependent persons in the United States” for several reasons, including that the .addiction-asdnjury tort sued upon was “immature”).[4] -Indeed, the purpose- of a class action is to allow a class representative to “litigate[ ] the common claims of a class of individuals too numerous'to join to the case individually.” Newberg on Class Actions § 1:2 (5th ed.); see also 67A C.J.S. Parties § 23 (“The purpose of a class action is to provide relief for large groups of people with the same claim[.]”) (emphasis added). Accordingly, “[t]o be a member of a class,” a person must necessarily “hold a claim that involves questions of law and fact common to the class and [that] is typical of the class as a whole.” Coleman v. Cal. Dep’t of Corr. & Rehab., No. 1:11-CV-01587-RRB,. 2014 WL 6964513, at *1 (E.D.Cal. Dec. 9, 2014) (emphasis added); cf. Briggs v. Brown & Williamson Tobacco Corp., Inc., 414 F.Supp. 371, 378 (E.D.Va.1976) (explaining that an individual Who did not have an “actionable” claim against the defendant “could not properly be made part of [the class action] lawsuit”).
Because, in the creeping disease context, knowledge is synonymous with the accrual of a cause of action, the majority’s decision oddly turns these principles on their head by allowing individuals who held no tobacco-related causes of action as of the class membership cut-off date — because those causes of action had not yet accrued — to nevertheless gain entry into the Engle class.- 'This result is also entirely inconsis.tent with Engle. See Frazier, 89 So.3d at 945 (“Plainly, many symptoms or effects that might later develop to become a com-pensable injury attributable- to smoking— shortness of breath, or persistent coughing, for example — do.not-in isolation provide a -sufficient legal basis for initiating a lawsuit against a tobacco company. Applying the teaching of Engle and the other ‘creeping disease’ cases, these., medically— and practicaíly[ — jambiguous ‘manifestations’ do not create an issue of fact, for resolution by a jury or the court.”).
Nothing in Engle indicates that this Court intended to give the term “manifestation,” which has .an. established legal meaning within the creeping disease context, an entirely new meaning without saying it was doing so. Cf. Larimore v. State, 2 So.3d 101, 113 (Fla.2008) (explaining that in. assigning meaning to terms, courts “look not only to the words themselves but also to ‘the context in which the language lies’”) .(quoting Horowitz v. Plantation Gen. Hosp. Ltd. P’ship, 959 So.2d 176, 182 (Fla.2007)); Miele v. Prudential-Bache Sec., Inc., 656 So.2d 470, 472 (Fla.1995) (“[W]e find that the plain meaning of ‘civil action’ must be derived from the context in which the language lies.”).
Moreover, .reading Engle to implicitly redefine “manifestation” is inconsistent with what this Court actually said. Rather than say that the Engle class includes plaintiffs whose symptoms were insufficient-to alert them to a connection between smoking and an injury, this Court de *1045 scribed the certified class as individuals who had incurred the tobacco-related injuries necessary to assert viable causes-of action.[5] See Engle, 945 So.2d at 1254 (explaining that Engle is a “smokers’ class action lawsuit that sought damages against cigarette companies and industry organizations for alleged smoking-related injuries”). Similarly, when it set the class cutoff date, this Court did not purport to make the class action jury’s findings available to plaintiffs whose tobacco-related causes of action had not yet accrued. See Engle, 945 So.2d at 1270 n. 12 (“[Cjlass members [are] those individuals who fit the class description as of the November 21, 1996, cut-off date [.]”) (emphasis added).
To the contrary, in Engle, this Court held, that two of the class representatives’ claims fell within the applicable May 5, 1990, to November 21, 1996, time range while a third class representative’s claims did not, without any indication by the Court that a different test should be applied for determining whether the plaintiffs’ tobacco-related diseases or conditions manifested too' soon rather than too late. See id. at 1276. In analyzing whether the class representatives were members of the Engle class, though this Court took issue with the district court’s use of diagnosis instead of “manifestation” as the relevánt benchmark, see id., it did not quarrel with the district court’s reasoning that to determine whether the class representatives were properly members of the class turns on when their causes of action accrued. See Liggett Grp. Inc. v. Engle, 853 So.2d 434, 453 n. 23 (Fla. 3d DCA 2003) (“[judgment should have been entered in favor of the defendants as to individual plaintiffs Farnan and Della Vecchia because their claims did not accrue until years after the cut-off .date for class membership.”) (emphasis added). Accordingly, the only reasonable way to apply the judicially-imposed bar date in Engle. consistent with our precedent concerning the “manifestation” of creeping diseases is to conclude that this Court closed the class to smokers whose tobacco-related causes of action had not accrued as of November 21,1996.
By viewing the question of whether a plaintiff is properly a member.of the Engle class with “the benefit of hindsight from the vantage point of 2006,” Ciccone, 123 So.3d at 613, rather than looking to whether the plaintiffs cause of action existed on November 21, 1996, the majority creates an entirely new definition of the word “manifestation” that has nothing to-do with when the plaintiffs' tobacco-related cause of action accrued. The majority’s definition is wrong based on our precedent defining , “manifestation” in the context of creeping disease cases. Worse still, it creates two different tests for admission into the same class, with the deciding factor as to which test applies being whether the plaintiffs injury allegedly manifested too soon or too late. The deciding factor as to whether a plaintiff is a member of the Engle class should not be which bar date is at issue. Rather, consistent with the established definition of “nianifestation,” whether the plairitiff is a member of the Engle class should turn on when the plaintiffs tobacco-related cause of' action accrued.
Indeed, by failing to define “manifestation” consistent with, our creeping disease precedent, the majority subjects the Engle class to the type of open-endedness this *1046 Court sought to avoid by closing it. In doing so, the majority renders Engle unconstitutional as applied in cases where the plaintiffs tobacco-related cause of action had not accrued as of the cut-off date.
Specifically, the majority’s decision violates th'e tobacco defendants’ due process rights (by allowing plaintiffs who are not proper class members to benefit from the class action jury’s findings). See Engle, 945 So.2d at 1275 (“One-way intervention” into an open-ended class would have “the effect of giving collateral estoppel effect to the judgment of liability in a case where the estoppel was not mutual.”) (quoting Katz v. Carte Blanche Corp., 496 F.2d 747, 759 (3d Cir.1974)); cf. Salisbury v. Kroyer Heating & Air Conditioning, 683 F.Supp. 177, 181 (N.D.Ohio 1986) (“The doctrine of res judicata applies, for due process reasons, only against parties and their privies, and does not affect strangers to the litigation.”). Indeed, the fact that “the claims in Engle and the claims in individual actions"..! are the same causes of action between the same parties ” whs critical to our recent decision denying the tobacco defendants’ due process challenge to giving the Engle findings “res judicata effect” in individual actions. ’ Philip Morris USA, Inc. v. Douglas, 110 So.3d 419, 432 (Fla.2013).
But the constitutional implications of the majority's decision are not just limited to the defendants. The majority’s decision is also contrary to the plaintiffs’ notice and opt-out rights (by imposing class membership upon individuals who had no reason to know they were class members). See Engle, 945 So.2d at 1274-75 (“[A]n open-ended, class would not allow for notice and an opportunity to opt out as required by [Florida Rule of Civil Procedure] 1.220(d)(2) and may implicate potential class- members’ right of access to the courts under article I, section 21 of the Florida Constitution.”); cf. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 628, 117 S.Ct 2231, 138 L.Ed.2d 689 (1997) (recognizing the constitutional implications of a class action noticie that is insufficient to inform'putativé class members that they are in fact" members'of the class). The majority dismisses these ‘concerns,, stating that “this Court already clearly defined the parameters of the ‘finite class’ in Engle to avoid the[m].” Majority op. at 1040. However, the fact" that Eñgle created parameters is of no help when the majority interprets the significant parameter of the class cut-off date iñ a way that renders it meaningless. ' .
TJnlike the majority, I would not torture Engle to allow plaintiffs whose tobacco-related causes of action had not accrued as of the class cut-off date to nevertheless be members of the class,[6] Rather, I would approve the First. District’s decision in Castleman, applying the same knowledge-based definition of “manifestation” from the statute pf limitations context to determine class membership in Engle. Accordingly,-1 would also disapprove the Fourth District’s decision to the contrary in Cic-cone, and remand this case for -a new trial.
I respectfully dissent.
CANADY, J., concurs.

. Engle v. Liggett Grp., Inc., 945 So.2d 1246 (Fla.2006). ''

. In the Engle class action, the trial court avoided the "immature tort” issue by “re-fus[ing] to allow potential claimants who have ■ -not manifested a disease or condition to become a member of the class.” Engle v. R.J. Reynolds Tobacco, No. 94-08273 CA-22, 2000 WL 33534572, at *9 (Fla.Cir.Ct. Nov. 6, 2000) (emphasis added).

. In fact, the class action notice specifically told individuals who had no reason to connect their symptoms to smoking that they were not members of the class: "You are not a member of the class ... if you are a smoker or former smoker who has not manifested or been diagnosed with any disease or medical condition caused by your addiction to cigarettes that contain nicotine.”

. Simply because these individuals are not part of the Engle class does not mean they are "without recourse since they may file their own actions within the applicable statute of limitations. Indeed, the plaintiff' in Ciccone filed suit in 2004 — two years after her husband died of lung cancer — and only claimed she was a member of the Engle class after our decision gave several of the class action jury’s findings res judicata effect. See Ciccone, 123 So.3d at 606.